8

398 P.2d 916

**Ernest W. SPARKS and Ruth G. Sparks, his wife, Appellants,**

v.

**SCOTTSDALE MORTGAGE CORPORATION, an Arizona Corporation, Appellee.***

No. 1 CA–CIV 15.

Court of Appeals of Arizona.

Feb. 9, 1965.

Locklear & Wolfinger, by H. J. Wolfinger, Prescott, for appellants.

Tom Roof, Phoenix, for the appellee.

STEVENS, Chief Judge.

The plaintiff below, being the Appellee herein, filed suit to establish the right to a claimed easement. The plaintiff prevailed and this appeal followed. The plaintiff's property will be referred to as the dominant property. The property of the appellants will be referred to as the servient property. The land area in controversy will be referred to as the claimed easement. All of the property involved in this litigation was at all times in the city limits of the City of Prescott. The dominant property fronts on a dedicated street. The boundary on the North side of the dominant property is a short dedicated street which dead ends into the servient property. The case was tried to the Court sitting without a jury. The trial judge made a visual inspection of the area in question.

The owner of the dominant property relies largely upon the principles set forth in Gusheroski v. Lewis, 64 Ariz. 192, 167 P.2d 390 (1946). The owner of the servient estate relies largely on the principles set forth in La Rue v. Kosich, 66 Ariz. 299, 187 P.2d 642 (1947).

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7467. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

It is the opinion of this Court that a detailed review of all of the evidence is not essential to a decision. Basically, the history of the ownership of the property can be setforth as follows:

| Dominant Property | Date | Servient Property |
|---|---|---|
| Yavapai Construction | Prior to 1919 | Yavapai Construction |
| House built and at the time of argument it was conceded the garage was probably built. | 1919 | |
| Viele acquired title | 1919 | |
| Bakewell acquired title | 1932 | |
| | 1934 | Russell acquired title |
| Byrne acquired title | 1936 | |
| | 1948 | McNally acquired title |
| | 1955 | Appellant acquired title |
| Appellee acquired title | 1960 | |

The exact date of the commencement of the use of the claimed easement is not clearly established. The record is clear that the claimed easement had been used extensively for the benefit of the dominant estate for some years before Byrne acquired title. It is clear that the claimed easement was consistently and extensively used during the entire ownership of the dominant property by the Byrne family during the Byrne's ownership and up to that date in 1960 when the owner of the servient estate interfered with the use. This interference was partial at first and later became total denial of the use through the physical obstruction of the claimed easement. The claimed easement could not be used at the time the suit was filed on July 5, 1960. The use was restored to the dominant property by a pendente lite injunction.

The claimed easement traversed a gentle arch from the end of the dead end street over the servient property to a point on the common property line. This point was near the entrance to the garage located on the dominant property and at the Westerly end of a narrow, steep driveway composed of two concrete ribbons which driveway lay wholly within the land of the dominant property. The concrete driveway entered the dominant property from the frontal dedicated street. The claimed easement was not the sole available means of ingress and egress. The use of the claimed easement was a material benefit to the dominant property in that by its use the matter of ingress and egress was made materially easier.

When Byrne acquired title the property was surveyed and Byrne then knew that the garage was approximately 1½' from the common line of the dominant and servient properties. The claimed easement was not used by the general public as such but was used in relation to the dominant property this use being by Byrne, by Byrne's friends and by those serving the commercial needs of the household. This is the same use enjoyed by the owners of the dominant property prior to the time Byrne acquired title. The record is silent as to any affirmative expression by any of the owners of the dominant property prior to the time Byrne acquired title. The record is silent as to any affirmative expression by any of the owners of the dominant property as to the use of the claimed easement as a matter of right until

the servient property passed to the appellants in 1955 at which time the appellants had the servient property surveyed. The appellants, as the new owners, were aware of this use of their land. Shortly after the 1955 survey Mrs. Byrne as one of the owners of the dominant property and Mrs. Sparks as one of the owners of the servient property, had a conversation in which Mrs. Byrne asserted the right to use the claimed easement. Thereafter the owner of the servient property took no action to interfere with the use of the claimed easement until 1960 after Mrs. Byrne had moved from the dominant property and the plaintiffs became interested in the dominant property.

There was evidence of a conversation between Mr. Bissell, the principal stockholder of the plaintiff, and Mrs. Sparks and there was testimony relative to some correspondence as well as some conversations by and between the attorneys and the parties. These conversations and this correspondence did not give rise to an estoppel.

The servient property remained unimproved until after 1955 when shortly after the purchase the appellants built a home upon the servient property and thereafter occupied the servient property.

■ The record reflects an open, notorious, uninterrupted continuous use of the claimed easement for a period in excess of the ten years specified in Section 12–526 A.R.S. The evidence does not reflect any protest by any owner of the servient property until 1955. The record does not reflect any overt notification as to a claim of right by the owners of the dominant property until 1955 other than the fact of use. The Court refers to its recently decided case of Rorebeck v. Criste, 1 Ariz.App. 1, 398 P.2d 678. Rorebeck cites many principles which apply equally to this case.

The claimed easement was used almost exclusively for the benefit of the dominant property. This was not a general public use. Therein lies the basic distinction between

Gusheroski and La Rue. In our opinion, the trial judge properly applied Gusheroski.

In addition to the above relief, plaintiff, the owner of the dominant land sought damages for the interference with the easement. The defendant, the owner of the servient land, did interfere with the use of the easement until restrained pendente lite, and an award of $200.00 in damages was made. The plaintiff is a corporation, a family corporation. The majority of the stock was owned by Mr. Bissell and the balance of the stock was owned by his children. The dominant land with its house and garage were used for personal use of Mr. Bissell and his family. It is urged on the appeal that there is no showing of damage to the corporation as distinguished from damage to Mr. Bissell. The only evidence as to damage was Mr. Bissell's testimony received over objection that the obstruction caused damage of $50.00 to $100.00 a day for a number of days.

■ This Court is of the opinion that the trial court's award is nominal. An easement being established, and interference with the use thereof being established, some damage necessarily arises by reason of the interference. The sum of $200.00 is not unreasonable as nominal damages.

It is recognized that the factual background in the case of Babbitt and Cowden Livestock Company v. Hooker, 28 Ariz. 263, 236 P. 722 (1925) is different from the facts in the case now under consideration. Nevertheless, the principles in relation to nominal damages are the same. On page 269 of the Arizona Reports, 236 P. on page 724, after reciting the fact of interference with the property rights, the court stated

"This is sufficient to sustain the action. Even in the absence of any evidence as to value, the plaintiff would have been entitled to nominal damages for the conversion."

The case was returned to the trial court with the additional comment

"The judgment should have been for plaintiff in at least a nominal amount * * *"

The judgment is affirmed in its entirety.

CAMERON and DONOFRIO, JJ., concur.