403 P.2d 3

Raymond SUITER and Maxine Price Suiter, his wife, and G. R. Suiter and Jane Doe Suiter, his wife, dba Ray Suiter & Son, Appellants,

v.

Warren H. KURTZ, Appellee.*

No. 1 CA–CIV 75.

Court of Appeals of Arizona.

June 17, 1965.

Rehearing Denied Sept. 2, 1965.

Hill, Savoy & Flickinger, by John E. Savoy, Phoenix, for appellants.

Richeson, Biaett & Bahde, by Kenneth Biaett, Phoenix, for appellee.

STEVENS, Chief Judge.

This case relates to the claimed establishment of an easement by prescription. The land in question lies within the SE ¼

to this Court pursuant to Section 12–120.23 A.R.S.

of Section 25, Township 3 North, Range 1 East, G & S R B & M in Maricopa County. All of the evidence indicates that the parties consider the said quarter section as a full 160 acres without any deductions for road purposes.

The following is an illustrative sketch of the quarter section:

| PLAINTIFF KURTZ<br>40 ACRES<br>NW¼ SE¼ SEC. 25 | NE¼ SE¼ SEC. 25<br>(NE 40 ACRES) |
|---|---|

CENTER OF QUARTER SECTION

¼ ¼ SECTION LINE ⟶

FENCE ⟶

OLD FENCE REMOVED IN 1962

DEDICATED 15 FOOT STRIP

DISPUTED 15 FOOT STRIP

| MR. PHILLIPS'<br>40 ACRES<br>SW¼ SE¼ SEC. 25 | DEFENDANT SUITER'S<br>20 ACRES<br>W½ SE¼ SE¼<br>SEC. 25 | E½ SE¼ SE¼<br>SEC. 25<br>(E. 20 ACRES) |
|---|---|---|

OLIVE                    AVENUE

ROUGH SKETCH OF THE SE¼ SEC. 25.
NOT DRAWN TO SCALE.
LOCATION OF OLIVE AVENUE DOES
NOT SHOW ITS RELATION TO THE
SOUTH SECTION LINE OF SEC. 25.

Olive Avenue runs East and West along the South section line of Section 25. The land in question is a North-South strip 15 feet wide being the Westerly 15 feet of the SE ¼ SE ¼ Section 25. To the West of this strip and bounded on the East by the North-South ¼ section line, being the line which divides the SW ¼ SE ¼ Section 25 from the SE ¼ SE ¼ Section 25, is another 15 foot strip, this last mentioned 15 foot strip being the Easterly 15 feet of the SW ¼ SE ¼ Section 25. This strip is a dedicated roadway. There is a fence along the Westerly boundary of the dedicated strip. No witness was able to inform the trial court as to the date of the dedication and the record supports the view that the dedication was made many years ago.

The 15 foot dedicated strip together with the adjacent 15 foot strip which is in question in this litigation extend Northerly along and on both sides of the ¼ ¼ section line to approximately the Southerly line of the N ½ SE ¼ Section 25 being 1320 feet, more or less.

The plaintiff Kurtz owns the NW ¼ SE ¼ Section 25. Mr. Phillips owns the SW ¼ SE ¼ Section 25. The defendant Suiter owns the W ½ SE ¼ SE ¼ Section 25, referred to as being 20 acres, his recorded title including the 15 foot strip in question.

The father of the plaintiff Kurtz acquired the Kurtz property in 1917. He held the title continuously until the plaintiff Kurtz acquired the same from him in 1938. During all this time and up to the time of trial, the Kurtz property has been used for farming.

The E ½ SE ¼ Section 25 has had a series of ownerships and the chain of ownership was traced by oral testimony with approximate dates of acquisition and sale. Tracing the title in reverse, the defendant Suiter acquired his property shortly before January 1962.

Prior to Suiter, Keith Sasser owned the entire East 80 acres for five or six years. He acquired the said 80 acres from his father Floyd Sasser. Floyd Sasser ac-quired the East 80 acres in approximately 1938, consolidating into one ownership two separate 20 acre parcels in the SE ¼ SE ¼ Section 25 together with the NE ¼ SE ¼ Section 25. Prior to this consolidation of ownership in Floyd Sasser, the NE 40 acres was owned by Rice for approximately 20 years and next prior to Rice's ownership, Bartlett owned the entire East 80 acres.

There is no ingress and egress to the Kurtz property except along the ¼ ¼ section line and the two aforementioned 15 foot strips on either side of said ¼ ¼ section line. A person traveling North on the two strips would be required to retrace his route as there is no other exit from the said N ½.

The Kurtz property has been used for farming including dairy cattle, the raising of grain and other general farm uses.

During Bartlett's ownership of the East 80 acres, he built a North-South fence from Olive Avenue to approximately the South line of the N ½ of the SE ¼ of Section 25, which fence was parallel to and approximately 15 feet Easterly from the ¼ ¼ section line. A number of years ago, the exact date not being established, utility poles were placed along this fence and the evidence is somewhat in conflict as to whether these poles were East or West of the fence, that is to say, within or without the 15 foot strip, the weight of the evidence appearing to support their location as being East of this fence. In 1950 or 1951, the fence posts were replaced with steel fence posts and the fence there remained until January 1962 when the defendant Suiter erected a fence on the ¼ ¼ section line. In February 1962, the plaintiff Kurtz filed this action to establish the easement which is the subject of this litigation.

At about the center of the quarter section, the exact location not being established in the record, there were irrigation head gates. From this point irrigation water was diverted to one property or the other. There is no evidence of the existence of irrigation ditches extending from this point beyond the boundaries of the SE¼ Section 25

and we must assume that water from these head gates was used only in the SE ¼ of Section 25.

The evidence indicates that those irrigating the property including the zanjeros used the 30 foot strip for the purpose of servicing this water distribution.

While Rice owned the NE 40 acres, he constructed a small drainage ditch described as one which has been shoveled out, this ditch being near the Easterly edge of the disputed 15 foot strip and just Westerly from the fence built by Bartlett. This ditch remained without substantial modification until approximately five or six years before the date of the trial, which trial was held on May 13, 1963. The modification was accomplished by Keith Sasser in that he enlarged and widened the ditch by the use of a blade similar to that used in connection with the operation of a road grader. This modification left a more or less perpendicular East bank of the ditch in the old location and converted the West bank of the ditch into a gradual slope to the West. This modification did interfere with the free use of a portion of the disputed 15 foot strip. However, it remained possible, when the need arose, to drive the wheels of vehicles on to this sloping Westerly edge and when wide farm equipment was being transported over the 30 foot strip which equipment had an overhang beyond the wheels, the overhang had no difficulty in passing over the waste ditch as so modified. Photographs received in evidence and taken immediately following the January 1962 fence construction disclose well worn wheel tracks to the East of the fence, that is, within the disputed 15 foot strip.

Persons who might possibly claim the right to the use of the waste ditch are not parties to this litigation and the judgment of the trial court does not affect their rights, if there be such rights to be affected. We express no opinion in relation to such rights as may exist in connection with the use of the waste ditch.

Phillips testified that he used the 30 foot strip. In addition to his home, and the home on the plaintiff's property, there were at one time two houses near the SW corner of the NE 40 acres, one of which was at one time used by Bartlett.

■ The plaintiff and other witnesses testified that they and the general public were free to use the 30 foot strip and they further testified that they considered the 30 foot strip as a "public road". The characterization of the 30 foot strip as a "public road" does not necessarily defeat the claimed easement by prescription. Curtis v. Southern Pacific Co., 39 Ariz. 570, 8 P. 2d 1078 (1932). A member of the public could not travel Northerly and go beyond the quarter section in question as was the situation in La Rue v. Kosich, 66 Ariz. 299, 187 P.2d 642 (1947), in which case the court stated that at the end of the disputed area, roads and trails fanned out in various directions across unenclosed land. The persons using the 30 foot strip were using it for the benefit of the plaintiff's land and the other land in the SE ¼ Section 25. While the use made of the 30 foot strip was larger than the use reflected in the case of Sparks v. Scottsdale Mortgage Corporation, 1 Ariz.App. 8, 398 P.2d 916 (1965), the use was nevertheless similar to and limited as in Sparks.

The interference caused by the widening of the waste ditch did not terminate the use, it only rendered the full use a little more difficult. The testimony discloses that the dedicated 15 foot strip was not adequate to the needs of the farm land in relation to the movement of threshing equipment when grain was grown, in relation to the movement of other wide agricultural machinery and in relation to the passing of vehicles traveling in opposite directions.

■ The fact that Suiter's predecessors in interest also used the 30 foot strip does not preclude to the plaintiff the rights which he acquired as is illustrated by the case of Gusheroski v. Lewis, 64 Ariz. 192, 167 P.2d 390 (1946). The fact of the existence of the fence and the utility poles and the use of the land Westerly therefrom is an im-

portant consideration in this case. Rorebeck v. Criste, 1 Ariz.App. 1, 398 P.2d 678 (1965).

 This case was tried to the court sitting without a jury. The record reflects ample evidence to sustain the trial court's finding and judgment establishing the plaintiff's easement over the 15 foot strip which is the Westerly 15 feet of the W ½ SE ¼ SE ¼ Section 25.

The judgment is affirmed.

CAMERON and DONOFRIO, JJ., concurring.