398 P.2d 678

Iva L. ROREBECK, Sebe L. Broyles and
Clarice L. Broyles, his wife, Appellants,

v.

Helen CRISTE, the wife of John Criste,
Appellee.*

No. I CA–CIV 3.

Court of Appeals of Arizona.

Feb. 2, 1965.

**2**

Tenney & Pearson, Phoenix, for appellants.

Elsing & Crable, John J. Barkley, Paul H. Primock, Phoenix, for appellee.

CAMERON, Judge.

This is an appeal by the defendants below from a judgment of the Superior Court of Maricopa County in favor of the plaintiff-appellee, Helen Criste, granting title to the plaintiff in a strip of land some 23 feet wide and approximately a quarter of a mile long:

27th Avenue in Maricopa County, Arizona, runs north and south. On the east side of said avenue, are two adjoining pieces of property. The south portion is owned by the defendants and the north portion is owned by the plaintiff, Helen Criste. Both parcels were formerly owned by the same person. In September, 1944, the south portion was deeded to the defendant and in October, 1945, the north portion was sold to the plaintiff's predecessor in interest by an agreement for sale. A deed dated 8 October, 1945, was recorded 15 February, 1946. Plaintiff's predecessor in interest, Mr. John Criste, is also plaintiff's husband.

Prior to both sales there was a fence running the complete length of the property from west to east. Said fence was actually 23 feet to the south of the true boundary line between the two parcels. When defendants entered upon the property they were aware, by their own testimony, that the fence did not represent the dividing line between their property and the property to the north. They had a survey made in 1948, at or near the time that plaintiff had a survey made on the property. At this time, the defendants knew that the fence was approximately 23 feet south of the true line, and the plaintiff's predecessor in interest learned for the first time that the fence was not on the true line, and that the property they occupied overlapped some 23 feet on defendants' property.

The testimony below is ample to show that the plaintiff and her predecessor occupied the north property up to the fence line until 1959, when the defendants tore the fence down.

Mr. Criste, plaintiff's husband, occupied the property in 1945. Mr. Criste's testimony indicates that he thought his property ran from fence line to fence line. At the time of his occupancy of the property, Mr. Criste had no knowledge that the fence line was not in fact the true line separating the two properties. The evidence shows that he farmed the land, grazed cattle on the property, and irrigated the property up to the fence line; leased the land for the raising of sudan grass, up to the fence line; and, on occasion, made repairs on the fence. The driveway to the house on the plaintiff's property ran over the 23 foot strip, and the irrigation ditch of the defendants ran along the south of the fence. Mr. Criste deeded the property to the plaintiff as her sole and separate property in 1949, and the Cristes left shortly after that, but left Mr. Criste's mother on the property. Mother Criste continued to occupy the property, planted cacti along the fence line, and even made repairs on the fence itself. The driveway was closed by a fence along 27th Avenue,

but was used several times a month when she had visitors, and used for parking during the monthly meetings of the American-Rumanian Club.

The defendants claim that when the survey was made in 1948, they placed a large post on the true property line at the extreme east end of the property. This is disputed by the testimony on behalf of the plaintiff, and the court could well find that the post was not placed on the property until much later, perhaps even after the bringing of the lawsuit. In any event, sometime in 1959, January or Good Friday, depending on which way the evidence is viewed, the fence was torn down by the defendants, and plaintiff brought suit for title to the property by adverse possession.

The matter being tried before the court below without a jury, the Question before this court is whether the evidence taken in the light most favorable to the plaintiff will support a judgment for title to the property by reason of adverse possession. Hillman v. Busselle, 66 Ariz. 139, 185 P.2d 311 (1947).

The Arizona Revised Statutes states in Sec. 12–521 A (1) as follows:

" 'Adverse possession' means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

Section B of 12–521 ARS is as follows:

" 'Peaceable and adverse possession' need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

Under the facts in this case, it takes ten years for adverse possession of a piece of real property to ripen into title, Sec. 12–526 ARS.

Our statutes follow the generally held rule that in order for one to acquire title

purely by adverse possession, such possession must be actual, open and notorious, hostile, under a claim of right, continuous for the statutory period (here 10 years), and exclusive. It is generally conceded that all of these elements must coincide before one may acquire title by adverse possession.

■ In the instant case, the plaintiff and her predecessor had actual possession of this property. They used the property for grazing cattle right up to the fence line; they irrigated up to the fence line; they leased the property to others for the raising of sudan grass, again up to the fence line; and their driveway ran over the disputed property. Mother Criste planted cacti along the fence line. We think that there is ample testimony to show actual occupancy of the strip of land in question.

Also, the testimony shows that such occupancy was open and notorious. The fence was an apparent separation of the property for all the world to see. The grazing of the cattle, irrigation and leasing of the property was notice to the world and particularly to the defendants that the plaintiff and her predecessors were treating this property as their property, and not as defendants' property.

■ It is almost unanimously agreed that to be adverse the possession must be hostile, not only against the true owner, but as against the world. Gunther & Shirley Company v. Presbytery of Los Angeles, 85 Ariz. 56, 331 P.2d 257 (1958).

■■ The term "hostile" leads to some confusion, however. One dictionary definition might lead to a conclusion that a showing of "ill will", "malevolence" or that the plaintiff had an evil intent or desire to thwart or injure is necessary. However, this approach does not correctly show the kind or degree of "hostility" necessary as an element of adverse possession. There need be no "ill will" or "evil intent". There need be merely a showing that one in pos-

session of the land claims the exclusive right thereto and denies (by word or act) the owner's title. Gusheroski v. Lewis, 64 Ariz. 192, 167 P.2d 390 (1946); Mittet v. Hansen, 178 Wash. 541, 35 P.2d 93 (1934); 1 Am.Jur., Adverse Possession Sec. 138, p. 872. In our opinion, the existence of the fence and its repair by the parties is one visible indication of a possession hostile to the defendants and to the world.

Possession of the property must be under a "claim of right" inconsistent with the rights of the owner. In the present case, the plaintiff's predecessor had no knowledge that the fence line was not, in fact, the true line separating the two properties. Clearly, there was no intent on the part of plaintiff's predecessor to claim the property adversely in 1945. At first indication, it would seem that there was no "claim of right" to the property prior to the survey in 1948, since there was no knowledge on the part of Mr. Criste that he was occupying something that did not belong to him already. The earlier cases so held, Buchanan v. Nixon, 163 Tenn. 364, 43 S.W.2d 380 (1931), and it has been stated as follows:

"It is often stated, and as an abstract proposition is certainly the prevailing rule, that where a party, through ignorance, inadvertence or mistake, occupies land beyond his true line, under the belief that it lies within his true boundary * * * his possession of the land lying outside the true line is not adverse, since the intent to claim title exists only upon the condition that the line acted upon is, in fact, the true line, and hence an indispensible element of adverse possession is wanting." 80 A.L.R. 155.

■ While this view may seem well founded in logic, still it is not the law in Arizona. Our Supreme Court has discussed this matter as follows:

"Where a person, acting under a mistake as to the true boundary line be-

tween his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims title to it and so holds, the holding is adverse and, if continued for the requisite period, will give title by adverse possession. And the fact that on taking possession he had no intention of taking what did not belong to him, or claimed that he had no desire or intention to take land belonging to the adjoining owner, or that he would have surrendered possession if he had known that the land in dispute was not within the calls of his deed, or that the owner of the record title was ignorant of the location of the true boundary line or of the fact that the land was his, or supposed that the adverse occupant intended to claim only what he actually owned, or the fact that both owners were mistaken as to the true boundary line, does not affect the operation of the rule. * * * In all cases the intention and not the mistake is the test by which the character of the possession is determined, it being prima facie sufficient that actual, visible, and exclusive possession is taken under a claim of right without reference to the fact that the possession was based on mistake. 2 C.J. 141, § 245." Trevillian v. Rais, 40 Ariz. 42, 45, 9 P.2d 402, 403 (1932).

The rule in Arizona is that a person may acquire title by adverse possession under a mistake of fact. In the instant case, the plaintiff and her predecessor occupied the land in question, and even though they had no knowledge that they were encroaching upon the property of the defendant, still they did occupy and claim the property as their own.

■ Our statute provides that the "peaceable and adverse possession" need not be continued in the person, but may be held by successive individuals as long as there is privity of estate, Sec. 12–521 B, ARS. Here the property was purchased by Mr. Criste who in turn deeded it to his wife, the plaintiff, as her sole and separate property. There can be no question but that this satisfies our statute on the subject.

■ The defendants question whether the occupancy was exclusive and point to the fact that defendants repaired the fence on occasion, and cut some weeds on the strip as well as killing ants. It could reasonably be inferred from the evidence, that this was merely an adjunct of the maintenance of the defendants' property. The cutting of weeds and killing of the ants would benefit the defendants almost as much as the plaintiff, and it is not an indication that the person doing so is disputing the adverse possession of the plaintiff. We would point out that the occupancy by the plaintiff, to be exclusive, does not have to take the form of any particular type of occupancy. Of course, the more nearly absolute his exclusiveness is, the stronger his position. But all the plaintiff must show is that he occupied or used the land as would an ordinary owner of the same type of land taking into account the uses for which the land was suitable. Norgard v. Busher, 220 Or. 297, 349 P.2d 490, 80 A.L.R.2d 1161 (1960). Land which was used ten years ago as farm land may be primarily residential ten years later. The law does not require that a party having occupied the land as farming land must continue to farm the said land for ten years for adverse possession to ripen into title. All that is necessary is that he occupy and use the land as would a normal owner of the land taking into consideration the changing uses for which the property in the general neighborhood may be put.

■ We are not called upon to decide whether or not the defendants in this case might be viewed in a different light were this unimproved desert land. Here, however, the defendant lived in the house on the south property. Every day that he occupied the property he could see the fence between the two properties. For approximately 14 years he left the fence standing as an outward indication to the

**6**

world that the dividing line between the two properties was, indeed, the fence line.

The trial court having heard the evidence in the case, arrived at the same conclusion. We, therefore, hold that the judgment must be and is affirmed.

STEVENS, C. J., and DONOFRIO, J., concurring.