714 P.2d 477

Martha Jane CHANDLER, a married woman, dealing with her sole and separate property; Lula M. Scher, a married woman, dealing with her sole and separate property, Plaintiffs-Appellants,

v.

Lester JACKSON and Dorothy D. Jackson, husband and wife; Lionel Davison and Margaret Davison, husband and wife; Francis Savarese and Frances M. Savarese, husband and wife; Wilhelm Rosemann, a single man; Tibshraeny Companies, Inc., an Arizona corporation; Ronald H. Pratte and Karen Pratte, his wife, Defendants-Appellees.

No. 1 CA–CIV 7556.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 30, 1986.

308

Sorenson, Moore & Julian by J. William Moore, Georgia A. Wilder, Phoenix, for plaintiffs-appellants.

Kaufman, Apker & Nearhood, P.C. by James R. Nearhood, Phoenix, for defendants-appellees Jackson & Tibshraeny.

Dushoff & Associates by Thomas K. Irvine, Phoenix, for defendants-appellees Davison & Pratte.

Wilhelm F. Rosemann and Frank Savarese, in pro per.

## OPINION

BROOKS, Judge.

The plaintiffs-appellants Lula M. Scher and Martha Jane Chandler, mother and daughter, filed suit to quiet title to a half-mile long, narrow strip of property located along the western edge of property to which their family, the A.J. Squires, had held title for many years. They claim that they have acquired the strip of property by adverse possession. Their claim to adverse possession rests on their contention that their family has considered a fence along the western side of their property to be their boundary and have used all the land up to the fence as their own since the 1940's. So too had A.J. Squire's parents who had been on the land for many years prior to that time. A survey performed in 1980, when plaintiff Scher was selling a portion of the property, revealed that the fence was not located on the true boundary, but in fact, was several feet inside the neighboring lands to the west, 15 feet at the narrowest point and 59 feet at the widest point.

The plaintiffs named as defendants the several persons who hold record title to the various portions of the disputed strip of. property. The strip of property (parcels 1, 2, and 3) and the ownership of the sur-

rounding land is depicted in "Exhibit A" attached to the trial court's findings of fact and conclusions of law which is reproduced herein.

EXHIBIT A

The trial court made findings of fact regarding ownership of land in the area and positioned the disputed strip of land as follows:

. . .

2. The plaintiff Scher is the holder of record title to those portions of Exhibit A designated as 2A and 2D.

3. Rogers (not a party to this lawsuit) is the holder of record title to that area designated as 3 and 2F on Exhibit A.

4. Plaintiff Chandler is the holder of record title to that parcel designated as 4B on Exhibit A.

5. Defendant Tibshraeny is the record owner of Parcel 1B on Exhibit A.

6. Defendants Jackson are the record owner of Parcel 1J on Exhibit A.

7. Defendants Ronald H. and Karen Pratte, husband and wife, are the record owners of Parcel 1H and acquired the property from Lionel and Margaret F. Davison, husband and wife, on July 8, 1981 by Warranty Deed.

8. Defendant Wilhelm Rosemann is the record owner of Parcel 1M on Exhibit A.

9. Defendants Anthony and Steven Savarese, as joint tenants with right of survivorship, are record owners of the east 320 feet of Parcel 1F.

10. Plaintiffs claim that they have acquired by adverse possession a strip of property running north to south bounded by a barbed wire fence on the west and the legal boundary on the east, and designated as Parcels 1, 2, and 3 on Exhibit A. Legal descriptions of these parcels are attached to plaintiffs' Amended Complaint on file herein.

11. The plaintiff Scher formerly owned Parcels 2F and 3 shown on Exhibit A, but sold those parcels to Rogers in 1980. Scher acquired her rights to the property in question in January of 1972 from the estate of her deceased husband, A.J. Squire.

12. The plaintiff Chandler is the daughter of the plaintiff Scher and acquired her rights in the property in question from her father, A.J. Squire, by deed in August of 1967.

The event which led the plaintiffs to file suit to quiet title to this strip of property at this particular time was Lula Scher's sale of a portion of her property to Rogers. The property sold to Rogers was landlocked and therefore Mrs. Scher granted him a 33 foot wide easement along the western border of the property she retained. A house is located on Mrs. Scher's property, 15 feet from the true boundary line on the west. Unless the plaintiffs can establish claim to the strip of property between the fence and the true boundary, the easement apparently will run through the house on Mrs. Scher's property.

After trial to the court, the trial court made lengthy findings of fact, including those set forth above. The trial court concluded that the plaintiffs had not established a claim to adverse possession of the property in question and granted judgment for the defendants. The plaintiffs appeal from the judgment and the denial of their motion for new trial.

The lands being referred to in this case lie within a quarter section of land near 51st Avenue and Lower Buckeye Road in Maricopa County, Arizona. Some discussion of the history of ownership and use of these lands is necessary for a review of the issues presented in this case.

The land in the eastern half of the quarter section was acquired by George Squire and his wife, most of it in 1928 and the southern most portion in 1936. George Squire farmed and maintained a dairy on the land with his three sons, two of whom were Rey Squire and A.J. Squire. In 1934 A.J. Squire married Lula M. Scher. That same year A.J. and Lula began leasing the lands in the western half of the quarter section from the owner of those lands. When the lease expired in 1936, A.J. and Lula returned to the eastern land owned by A.J.'s father. Rey Squire and his wife Charlie Mae then entered into a lease of the western lands. A.J. Squire inherited the eastern land after George Squire died in 1943. A.J. and Lula continued the dairy operation on the land until 1961. After selling the dairy herd at that time, A.J. and Lula then merely farmed and kept a few cattle on the land for their personal use. In 1967, A.J. and Lula deeded the southern portion of their property to their daughter, Martha Jane Chandler. In 1971, A.J. died and Lula inherited the remainder of the eastern land. From approximately 1973 to 1979, Lula and Martha leased their property to Gomez who farmed the land. In December, 1980, Lula sold a portion of her property to Rogers and shortly thereafter the plaintiffs filed the present suit to quiet title to the strip of land between their true western border and the fence.

Meanwhile, the land in the western half of the quarter section had been leased by Rey and Charlie Mae Squire from 1936 until 1946 at which time they purchased the property. Throughout the years they were on the land, they also farmed and maintained a dairy herd. In 1958, Rey and Charlie Mae divorced and divided the western property. Charlie Mae took title to the northern portion where she continued to live and farm the land until she sold to Tibshraeny in 1979. Rey received title to the remainder of the property which he

sold in 1962. Thereafter, the portion sold by Rey was subdivided and resold to various persons. In 1966, defendants Davison acquired the parcel which they subsequently sold to defendants Pratte in 1981 after this suit was filed. Defendants Rosemann and Savarese acquired their respective parcels in 1972 and defendant Jackson in 1976.

Before determining whether the evidence supports the trial court's ruling that adverse possession had not been shown, we consider a preliminary issue raised by defendants Pratte and Davison, challenging Scher's standing to bring this action. These defendants argue that Scher has no standing to bring a quiet title action against them because she no longer owns the property east of the parcel presently owned by Pratte, having sold it to Rogers. They argue that since the deed to Rogers does not show that Scher reserved her claim to the strip of land between the legal boundary and the fence, any interest she may have had passed to Rogers. The defendants have cited no authority holding that Scher needed to place a reservation of right in the deed she gave to Rogers, and we do not find this to be a correct statement of the law.

The deed from Scher to Rogers does not purport to convey to Rogers any land but that to which Scher held legal title. Since the deed does not convey the disputed property, Scher's claim of title by adverse possession would pass to Rogers only if she had transferred actual possession of that property to him. *See, e.g., Santos v. Simon,* 60 Ariz. 426, 138 P.2d 896 (1943); 3 Am.Jur.2d *Adverse Possession* § 64 (1962). Scher testified at trial that she had not transferred possession of the strip of land outside her legal description to Rogers and there is no evidence in the record to suggest otherwise. Therefore, Scher retained whatever interest she may have had in the subject property and has standing to bring a quiet title action against all the named defendants.

We now turn to the questions raised concerning sufficiency of the evidence to sustain the trial court's ruling. The plaintiffs in this instance were required to show that they or their predecessors in title had maintained adverse possession of the strip of property for the 10 year period provided in A.R.S. § 12–526(A). It is well settled that "in order for one to acquire title purely by adverse possession, such possession must be actual, open and notorious, hostile, under a claim of right, continuous for the statutory period, and exclusive." *Rorebeck v. Criste,* 1 Ariz. App. 1, 3–4, 398 P.2d 678, 680–81 (1965). There are no equities favoring the establishment of such a claim. *Combs v. Du-Bois,* 135 Ariz. 465, 662 P.2d 140 (App. 1982). In determining whether the plaintiffs met this burden of proof, we must view the evidence in the light most favorable to sustaining the trial court's findings and judgment and the judgment will not be disturbed if there is any reasonable evidence to support it. *Van Dusen v. Registrar of Contractors,* 12 Ariz.App. 518, 472 P.2d 487 (1970). We are bound by the trial court's findings of fact, unless they are demonstrated to be clearly erroneous, although not by the trial court's conclusions of law. *Combs, supra.*

The plaintiff Scher testified that the fence in question had been in place before she came to the area in the 1930's. The plaintiffs argue that they and their family, during the entire time they owned the property in the eastern half of the quarter section, had claimed the property all the way to the fence line. The plaintiffs testified to the open and actual use they had made of this particular strip of land during the years they had operated the dairy. Throughout those years a second fence was also in place 16 feet east of the other fence. They had used the land between the two fences as a lane to drive their dairy herd up and down to the barn and had also used it for hauling hay and driving equipment to tend to the cattle. There was no dispute in the evidence that the plaintiffs were using the land in this manner and that their use may have been exclusive and continuous for more than 10 years. However, during the years that the plaintiffs operated the dairy, from the 1930's to 1961, the persons possessing or owning the adjacent lands to the west were the plaintiffs'

relatives, Rey and Charlie Mae Squire. The evidence at trial undisputedly showed that the two Squire families were very close and caring. The trial court's express finding was that:

18. The Squires used the property on both the east and west half of the legal boundary as a dairy farm. There was no hostility or animosity between family members, and the Squires exchanged farm equipment, milked each other's cows, jointly repaired the fences, and loaned each other grain. There was no evidence that any member of the Squire family asserted a claim to the disputed property superior to the other or that there were any disagreements or hostilities concerning the fence in question.

The plaintiffs argue that the trial court misunderstood what needs to be shown to prove that a claim is "hostile." They point out the generally recognized principle in adverse possession cases that no showing of "ill will" or "evil intent" must be shown to prove "hostility." There need be merely a showing that the adverse claimant claims the exclusive right to the land and denies, by word or act, the owner's title. *Rorebeck, supra.* They also point out that under Arizona law, it is immaterial that the adverse claimant or the legal owner knows or does not know the true boundary and that a claim of right is nothing more than the intention of the party in possession to appropriate and use the land as his own to the exclusion of others. *Trevillian v. Rais,* 40 Ariz. 42, 9 P.2d 402 (1932); *Higgenbotham v. Kuehn,* 102 Ariz. 37, 424 P.2d 165 (1967). Plaintiffs argue that their intention to claim to the fence line together with their actual and exclusive use of the land for the requisite period was all that was necessary to prove adverse possession in this case.

■ While the principles cited by the plaintiffs are generally true and perhaps would have established plaintiffs' right to adverse possession against a nonfamily member, the plaintiffs have failed to take into account the special rules that apply when adverse possession is being claimed against a close family member. In *Tena v. Yorgulez,* 24 Ariz.App. 311, 538 P.2d 398 (1975), Division Two of this court cited with approval the general principle set forth in 3 Am.Jur.2d *Adverse Possession* § 147 (1962) that:

It is a general principle that members of a family may not acquire adverse possession against each other in the absence of a showing of a clear, positive, and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner a sufficient length of time to bar him under the statute of limitations from asserting his rights. *Stronger evidence of adverse possession is required where there is a family relation between the parties than where no such relation exists.* (Emphasis in original).

The court in *Tena* did not explain the nature of the stronger evidence that must be shown, but we find a consistent position taken by the courts that have considered this question. In determining what kind of evidence must be shown to establish adverse possession against a family member, it has been explained repeatedly that the mere occupation of the land that might be sufficient against other persons is not sufficient against a family member and that in such instance there must be acts so notorious and unequivocally hostile as to charge such family members with knowledge of an adverse claim. *See, e.g., McGuire v. Wallis,* 231 Ark. 506, 330 S.W.2d 714 (1960); *Smith v. Smith,* 95 Idaho 477, 511 P.2d 294 (1973); *Apodaca v. Hernandez,* 61 N.M. 449, 302 P.2d 177 (1956); *Norgong v. Whitehead,* 225 Minn. 379, 31 N.W.2d 267 (1948).

■ We find a complete absence of any unequivocally and notoriously hostile acts taken by the A.J. Squire family in this case that would have put the Rey Squire family on notice of the claim against them. The trial court did not abuse its discretion in concluding that the mere possession and occupancy of the land, even if exclusive, was not sufficient in this instance.

■ In 1962, Rey Squire sold his property. Thereafter the plaintiffs could establish their claim for adverse possession against property acquired by nonfamily

members without the higher burden of proof being necessary. Plaintiffs argue that the existence of the fence and their intention of claiming to the fence established their adverse possession in the years after 1962. However, we find that there was no evidence in the record of the open and actual use of that particular strip of land after the plaintiffs ceased their dairy operation in 1961. Moreover, the trial court made a fact finding, which is supported by the evidence, that from 1966 to the date of trial, none of the fences to the west of the property were maintained in good repair. With the fences in a state of disrepair, the few cows remaining on the plaintiffs' property frequently wandered through the fences onto the adjacent properties.

In *Knapp v. Wise*, 122 Ariz. 327, 594 P.2d 1023 (App.1979), the court noted that enclosure of land itself may be evidence of possession but where the enclosure is relied upon as the evidence of possession, "it must be complete and so open and notorious as to charge the owner with knowledge thereof." *Id.* at 329, 594 P.2d at 1025. In *Overson v. Cowley*, 136 Ariz. 60, 664 P.2d 210 (App.1982) we noted that an enclosure need not under all circumstances be in condition to turn cattle in order to serve as evidence of possession, but that a fence that is temporarily down must be restored within a reasonable time. We find that the evidence in this case supports the trial court's finding that the fences were not sufficiently maintained after 1966 and, therefore, that the fence in this case did not establish adverse possession against the true owners of the property.

We note that there is some evidence in the record to suggest that Mr. Davison, who owned one of the parcels of property, at least had some awareness of the plaintiffs' claim to adverse possession of the strip of land between the fence and the true boundary. Davison, who purchased his property in 1966, spoke to A.J. Squire at that time about the boundary between their properties. He pointed out that the fence was not on the true boundary but was located on his property. A.J. Squire apparently told him that he claimed the

property up to the fence line, but Squire took no action to mend the fence which was in a state of disrepair. Davison also testified that there was no use of the strip of land during the ensuing years. Under these circumstances, we find that no sufficient claim of adverse possession was made against Davison because the element of actual possession was lacking.

Additionally, there was no showing of possession for the statutory 10-year period after Davison purchased land in 1966. In approximately 1973, the plaintiffs' lands were leased to Gomez. The lease contained no specific language requiring Gomez to maintain the plaintiffs' claim of possession to the strip of land. The trial court found that Gomez did not use the strip of land and we believe the evidence supports this finding. There was no evidence of an agreement between Gomez and the plaintiffs to possess the strip of land. Under these circumstances, the plaintiffs are not allowed to tack on the years that Gomez was in possession of their land. In *Cheatham v. Vanderwey*, 18 Ariz.App. 35, 499 P.2d 986 (1972), we held that when land is leased, the landlord-adverse possessor is out of possession and if he is allowed to tack on the years of the lease, there must either be a description of the property allegedly adversely possessed in the lease, or, at the very least, an agreement that the tenant will continue the adverse possession of the landlord.

Defendants-appellees Jackson, Tibshraeny, Pratte and Davisons have requested attorney's fees on appeal pursuant to A.R.S. § 12–341.01(C). They argue that the appeal constitutes harassment, is groundless, and not made in good faith. We disagree and decline to award attorney's fees on appeal.

For the foregoing reasons, the judgment of the trial court is affirmed.

GREER, P.J., and HAIRE, J., concur.