818 P.2d 190

**Philip C. AMMER and Dolores J. Ammer, husband and wife, Plaintiffs, Counter Defendants–Appellants,**

v.

**ARIZONA WATER COMPANY, an Arizona corporation, Defendant, Counter Plaintiff–Appellee.**

No. 1 CA–CV 90–023.

Court of Appeals of Arizona, Division 1—Department A.

Aug. 27, 1991.

Wallace J. Baker, Jr., Phoenix, for plaintiffs, counter defendants-appellants.

Robert W. Geake, Phoenix, and Linden, Chapa and Fields by Hugh A. Holub, Tucson, for defendant, counter plaintiff-appellee.

## OPINION

BROOKS, Presiding Judge.

Philip and Dolores Ammer appeal from a summary judgment quieting title to a parcel of real property in the Arizona Water Company (AWC). On appeal, they argue that the trial court erred in holding that it was necessary for them to show that they had exclusive possession of AWC's property in order to establish a prescriptive easement. They also argue that the trial court erred in granting summary judgment when genuine issues of material fact existed. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In reviewing the trial court's grant of a motion for summary judgment, we state the facts in the light most favorable to the parties who opposed the motion. *Wright v. Hills*, 161 Ariz. 583, 780 P.2d 416 (App. 1989). In 1971, the Ammers leased a lot located in Munds Park, Arizona, from Douglas and Frances Jackson and Russell and Barbara Faulkner. In the same year, the Ammers built a general store on the property and created a graveled parking lot

for it. The graveled area encompassed land owned by AWC. The Ammers' lease was amended in 1974 so that they could expand the store onto an adjacent lot that the Jacksons and the Faulkners also owned. In 1975, the Ammers paved the parking lot, including all of AWC's portion of it, with asphalt.

The Ammers bought the two lots that they had been leasing in 1979. They continued to operate the store until 1984, when they sold their business to Richard and Shirley Bishop and leased the Bishops the store building and the land. In 1987, the Bishops sold the business to Wesley and Margaret Measday. The Ammers then leased the building and the land to the Measdays.

In a letter dated February 3, 1988, AWC informed the Ammers that part of the store's parking lot was encroaching upon its property. The parties were unable to reach a mutually satisfactory resolution of the problem, and AWC ultimately fenced the portion of the lot that encompassed its property. The Ammers filed a complaint against AWC and the company that had erected the fence. They asked the court to declare that they had a prescriptive right to use the section of AWC's property in question as a parking lot. They also asked that AWC and the fence company be temporarily and permanently restrained from interfering with that use. The trial court granted the preliminary injunction, and the fence was removed. The Ammers subsequently dismissed their complaint against the fence company.

AWC answered the Ammers' complaint and filed a counterclaim in which it alleged trespass to its property and sought quiet title to the property and reasonable rent for the Ammers' use of it. AWC then filed a motion for partial summary judgment in which it contended that the Ammers were not entitled to a prescriptive easement because they had not established continuous adverse use of the property for the ten-year period required by Arizona's adverse

possession statute. In response, the Ammers argued that they and their lessees had continuously used the property for parking since 1971. They also argued that these successive interests could be tacked to meet the ten-year requirement and that the other elements of adverse use had been established.

The trial court granted AWC's motion for partial summary judgment, finding that the Ammers had not been in possession of AWC's property for a continuous period of ten years. AWC subsequently filed a motion for summary judgment on its counterclaim. The trial court granted the motion, quieting title to the disputed property in AWC and awarding it nominal damages. This appeal followed.

## DISCUSSION

 We will affirm the trial court's grant of a motion for summary judgment if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). We begin our discussion by noting that an easement is a right that one person has to use the land of another for a specific purpose. *Etz v. Mamerow*, 72 Ariz. 228, 233 P.2d 442 (1951). Such a right may be created by prescription. *Gusheroski v. Lewis*, 64 Ariz. 192, 167 P.2d 390 (1946). Although prescription and adverse possession are not identical theories, the rules of law that govern the acquisition of title by adverse possession generally apply to the creation of easements by prescription. *Lewis v. Farrah*, 65 Ariz. 320, 180 P.2d 578 (1947).[1] In order to establish a prescriptive easement, a party must demonstrate that the land which is allegedly subject to the easement has been actually and visibly used for a specific purpose for ten years and that the use was commenced and continued under a claim of right inconsistent with and hostile to the claim of another. *LaRue v. Kosich*, 66 Ariz. 299,

---

1. Prescription is based upon the use of land and results in the acquisition of a nonexclusive right to continue to use it, while adverse possession is based upon the possession of land and results in the acquisition of fee title to it. *See* 2 G. Thompson, *Commentaries On The Modern Law Of Real Property* § 340 (1980); *Etz v. Mamerow*, 72 Ariz. 228, 233 P.2d 442 (1951).

187 P.2d 642 (1947); A.R.S. §§ 12–521(A), – 526(A).[2]

The use need not have been carried out by the same person for the entire ten years. *Cheatham v. Vanderwey*, 18 Ariz.App. 35, 499 P.2d 986 (1972). The doctrine of tacking permits successive segments of use to be combined to establish the continuous ten-year period. *Id.;* A.R.S. § 12–521(B).[3] However, tacking is only allowed when there is privity of estate between the successive users. A.R.S. § 12–521(B). In the prescription context, privity of estate is created by a conveyance, agreement, or understanding that refers the successive adverse use to the original adverse use and is accompanied by a transfer of the use. *See Santos v. Simon*, 60 Ariz. 426, 138 P.2d 896 (1943).

In order to acquire title by adverse possession, a person must demonstrate that he had exclusive possession of the property at issue throughout the ten-year period. *Overson v. Cowley*, 136 Ariz. 60, 664 P.2d 210 (App.1982). The same showing is not required of a person seeking to establish an easement by prescription. *Etz*, 72 Ariz. at 231, 233 P.2d at 444. A person may establish a prescriptive right even though other people, including the holder of fee title in the servient tenement, use the property in the same way that he does. 2 G. Thompson, *Commentaries On The Modern Law of Real Property* § 343 (1980). His use need only be exclusive in the sense that it is based upon a right that he claims as an individual rather than as a member of the general public.[4]

An easement may be appurtenant or in gross. *See Solana Land Co. v. Murphey*, 69 Ariz. 117, 210 P.2d 593 (1949). An easement appurtenant involves two parcels of land—the dominant tenement, to which the right of use belongs, and the servient tenement, which is subject to the use. An easement appurtenant is created to benefit the owner of the dominant tenement in the use of his land. 3 R. Powell, J. Backman, *The Law Of Real Property* ¶ 405 (1991). An easement in gross, on the other hand, is created to benefit its owner independently of his ownership or possession of specific land. *Id.* In determining whether a prescriptive easement is appurtenant or in gross, courts consider whether the adverse use took place in connection with and for the benefit of a particular parcel of land. 3 H. Tiffany, B. Jones, *The Law Of Real Property* § 759 (3d ed. 1939). They also consider whether the easement would have any value apart from its use in connection with the land in question. In the instant case, the Ammers used AWC's property for parking in connection with and for the benefit of the land on which the store was located. The easement that they seek to acquire would have no value apart from its use in connection with this property. We therefore conclude that they are attempting to establish an easement appurtenant.

2. Arizona Revised Statutes section 12–521(A) provides in pertinent part as follows:

1. "Adverse possession" means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

2. "Peaceable possession" means possession which is continuous, and not interrupted by an adverse action to recover the estate. Arizona Revised Statutes section 12–526(A) provides as follows:

A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward.

3. Arizona Revised Statutes section 12–521(B) provides as follows:

"Peaceable and adverse possession" need not be continued in the same person, but when held by different persons successively, there must be privity of estate between them.

4. The trial court appears to have granted summary judgment in AWC's favor on the ground that the Ammers had not shown the ten-year period of *continuous* use necessary to create a prescriptive easement. However, the court also found that the Ammers had not been in "exclusive" possession of AWC's property for *ten* years. The court erred in listing exclusive possession as one of the prerequisites for establishing an easement by prescription.

A prescriptive easement appurtenant to a dominant tenement can only be created in favor of the person who has a fee simple estate in the dominant tenement. 2 G. Thompson, *Commentaries On The Modern Law Of Real Property* § 321 (1980); 4 H. Tiffany, *The Law Of Real Property* § 1193 (1975). A tenant for life or for years cannot establish such a right in his own behalf. *Deregibus v. Silberman Furniture Co.*, 121 Conn. 633, 186 A. 553 (1936); *Bell v. Bomes*, 78 R.I. 37, 78 A.2d 362 (1951). His adverse use of adjacent property will only ripen into a prescriptive right if it occurs by virtue of a lease, agreement, or understanding with a landlord who holds fee title in the dominant tenement. *See Deregibus*, 121 Conn. at 637–39, 186 A. at 555–56; *Toto v. Gravino*, 37 Del.Ch. 431, 144 A.2d 237 (1958); *Coggins v. Shilling*, 30 N.J. Super. 26, 103 A.2d 171 (1954). Such an agreement or understanding need not be in writing. *See Toto*, 37 Del.Ch. at 433–34, 144 A.2d at 239.

When a tenant's adverse use is within the terms of his tenancy, it inures to the benefit of his landlord. *Olsen v. Noble*, 209 Ga. 899, 76 S.E.2d 775 (1953). The landlord will then be permitted to tack the period of his tenant's adverse use to periods of his own adverse use for the purpose of establishing an easement by prescription. *See Chandler v. Jackson*, 148 Ariz. 307, 714 P.2d 477 (App.1986); *Cheatham*, 18 Ariz.App. at 39, 499 P.2d at 990; Annotation, *Tacking As Applied To Prescriptive Easements*, 72 A.L.R.3d 648, § 12 (1976). If a tenant whose adverse use is within the terms of his tenancy subsequently purchases the leased property, he will be permitted to tack the periods of his adverse use as a tenant to the periods of his adverse use as holder of fee title to establish a prescriptive right. *Toto*, 37 Del.Ch. at 432–34, 144 A.2d at 238–40; 4 H. Tiffany, *The Law Of Real Property* § 1207 (1975).

If a tenant initiates an adverse use that is not within the terms of his tenancy, the use will remain a trespass and will not ripen into a prescriptive right no matter how long it continues. *Bell*, 78 R.I. at 41–42, 78 A.2d at 364. Some courts explain this rule by noting that it is the landlord, the holder of fee title, who must assert any prescriptive rights that accrue as a result of the tenant's adverse use. If the tenant's adverse use is not within the terms of his tenancy, the landlord will not be liable for the tenant's trespass in a suit brought by the owner of the property that is being adversely used. The courts reason that where there is no basis for subjecting the landlord to the penalties that arise from the trespass, there is no basis for according him the benefits that arise from it either. *Id.; Deregibus*, 121 Conn. at 639, 186 A. at 555–56.

In the present case, the Ammers leased the property on which the store was located from May of 1971 until September of 1979, a period of more than eight years. They then occupied the property as its owners from September of 1979 until April of 1984, a period of four and one-half years. They subsequently leased the property to the Bishops from April of 1984 until October of 1987, a period of three and one-half years. Finally, they leased the property to the Measdays in October of 1987. The Measdays had been occupying the property for approximately four months when AWC asserted its ownership of a portion of the parking lot in February of 1988.

From the foregoing facts, it is evident that the Ammers could not demonstrate the continuous ten-year period of adverse use necessary to establish a prescriptive easement unless they were entitled to tack at least a portion of the time in which they used AWC's property as tenants of the Jacksons and the Faulkners. In order to tack this period, it was necessary for them to show that their use of AWC's property fell within the terms of a lease, agreement, or understanding between themselves and their lessors. Unfortunately, however, neither side addressed this prerequisite in the trial court. The lease does not contain any reference to AWC's property, and the Ammers did not present any evidence of an agreement or understanding that encompassed its use. Although AWC argues on appeal that the Ammers cannot tack the

period during which they used its property as tenants of the Jacksons and the Faulkners, it did not raise this argument in the trial court.

We will affirm a grant of summary judgment on an issue raised for the first time on appeal only if no conceivable facts exist under which the nonmoving party could prevail on the issue. *Rhoads v. Harvey Publications, Inc.,* 131 Ariz. 267, 640 P.2d 198 (App.1981). Therefore, if we were to find that the Ammers could not establish a prescriptive easement for any of the other reasons that AWC advances on appeal, the parties' failure to present the trial court with the issue of whether the Ammers could tack the period during which they used AWC's property as tenants would not be significant. However, in the following discussion, we find that AWC's remaining arguments are without merit and that it was not entitled to summary judgment on the grounds that it raised in its motion.

AWC argues that the Ammers did not show that they had used its property for parking prior to 1979. We disagree. In response to AWC's motion for summary judgment, the Ammers submitted an affidavit in which they stated that they had been using a portion of AWC's property for parking since 1971 and that they had blacktopped that portion in 1975. They also submitted an affidavit by Wilson and Lucille Palmer. The Palmers stated that the parking lot was graveled when they first became customers of the Ammers' store in 1971. They further stated that the lot had been blacktopped in 1975 and that they had seen hundreds of the store's customers park in the lot each year since 1971. AWC did not controvert these facts.

AWC next argues that the Ammers did not establish their right to tack the periods during which they leased their land to the Bishops and the Measdays. We initially note that since the Ammers occupied the land adjacent to AWC's property as tenants for over eight years and as owners for four and one-half years, their inability to tack the periods during which they leased the land to the Bishops and the

Measdays would not necessarily prove fatal to their claim. However, we also believe that the Ammers demonstrated the right to tack the periods in question.

As we have explained, a landlord may tack a period of his tenant's adverse use to periods of his own adverse use as long as there is privity of estate between him and his tenant *with regard to the adverse use. See Chandler,* 148 Ariz. at 313, 714 P.2d at 483. Privity exists where the terms of a lease, agreement, or understanding between the landlord and the tenant transfer the adverse use from the landlord to the tenant and the tenant continues the adverse use. *See Santos,* 60 Ariz. at 428, 138 P.2d at 897. *See also King Ranch Properties Ltd. Partnership v. Smith,* 158 Ariz. 271, 762 P.2d 558 (App.1988) (finding that privity existed where landlord had adversely possessed property at issue, property had been referred to in the lease, and tenants had continued the adverse possession). The express terms of the Ammers' leases with the Bishops and the Measdays did not address the use of AWC's property, and AWC argues that the Ammers failed to present any evidence of an understanding or agreement that encompassed the use. We disagree.

In response to AWC's motion for summary judgment, the Ammers presented the affidavits of Richard Bishop and Wesley Measday. Bishop and Measday both stated that they had treated the entire paved parking area as part of the leased premises. Bishop said that he had always believed that the whole parking area was included in the lease, and Measday said that Philip Ammer had told him that the entire area was included before he rented the property. AWC argues that these affidavits should not be considered because they violate the parol evidence rule by adding to the terms of the lease. We disagree.

The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict the terms of a written contract that is meant to be the final and complete statement of the parties' agreement. *Lambros Metals v. Tannous,* 71

Ariz. 53, 223 P.2d 570 (1950). However, the rule only applies when the parties to an action are seeking to enforce rights or obligations that arise out of the contract. *Doelle v. Ireco Chemicals*, 391 F.2d 6 (10th Cir.1968); *Suciu v. Amfac Distrib. Corp.*, 138 Ariz. 514, 675 P.2d 1333 (App.1983); 3 B. Jones, S. Gard, *Jones On Evidence* § 16.17 (6th ed. 1972). The parties in the present case are not attempting to enforce any rights or obligations that stem from the leases between the Ammers and their tenants. As a result, the parol evidence rule is inapplicable.

AWC next points out that the Bishops' lease, by its terms, expired on April 2, 1987, and that the Measdays' lease did not begin until October 12, 1987. It contends that this gap between the termination of the Bishops' lease and the commencement of the Measdays' lease broke the continuity of the adverse use. However, Richard Bishop stated in his affidavit that he and his wife actually leased the property until October 12, 1987. AWC maintains that Bishop's affidavit cannot be considered because it violates the parol evidence rule by adding to or varying the terms of the lease. Again, we disagree.

As we have explained, the parol evidence rule is not applicable in this case. In addition, we note that while the rule generally prohibits the admission of oral statements or written agreements that were made prior to or contemporaneously with the execution of a contract, it does not prohibit the admission of evidence that the parties to a contract subsequently modified it or entered into a new agreement. *Eng v. Stein*, 123 Ariz. 343, 599 P.2d 796 (1979); *In re Estate of MacDonald*, 4 Ariz.App. 94, 417 P.2d 728 (1966). Consequently, even if the rule was applicable here, it would not bar the admission of evidence that the Bishops either extended their lease or remained as month-to-month tenants until October 12, 1987.

In their affidavit, the Ammers essentially stated that they had transferred their adverse use of AWC's property to the Bishops and the Measdays. The affidavits of Richard Bishop and Wesley Measday confirm that the transfer actually occurred and that both sets of tenants understood that they were to continue the use of the entire parking lot, including the disputed area, as part of their tenancies. We note that under Arizona law, a person does not have to know that the property that he is using belongs to another in order to establish a prescriptive easement. *See Kay v. Biggs*, 13 Ariz.App. 172, 475 P.2d 1 (1970); *Rorebeck v. Christe*, 1 Ariz.App. 1, 398 P.2d 678 (1965). We therefore conclude that it was not necessary for the Ammers to establish that the Bishops and the Measdays knew that the use that they were continuing was adverse.

We also note that an understanding on the part of a tenant that the use of certain property is included in the terms of his tenancy may be inferred from the circumstances. *Deregibus*, 121 Conn. at 639, 186 A. at 555; *Toto*, 37 Del.Ch. at 433, 144 A.2d at 239; *Coggins*, 30 N.J. Super. at 30, 103 A.2d at 173. It is reasonable to assume that anyone leasing the Ammers' property would have concluded that the portion of AWC's parcel that was covered by the parking lot was included in the tenancy. We therefore find that the facts presented would have been sufficient to establish the Ammers' right to tack the periods of time in question, even in the absence of the statements by Richard Bishop and Wesley Measday.

## CONCLUSION

The Ammers could not demonstrate the continuous ten-year period of adverse use necessary to establish a prescriptive easement unless they were entitled to tack at least a portion of the time during which they used AWC's property as tenants of the Jacksons and the Faulkners. Since the record before us indicates that AWC's property was never adversely used until the Ammers built the store and created the parking lot, it seems unlikely that there was such an agreement or understanding between the Ammers and their lessors. However, because the trial court did not consider this issue, the Ammers are enti-

tled to an opportunity on remand to present whatever evidence they may have concerning it.

The judgment of the trial court is reversed and the matter is remanded for proceedings consistent with this opinion.

CONTRERAS and JACOBSON, JJ., concur.