920 P.2d 26

**SABINO TOWN & COUNTRY ESTATES ASSOCIATION, an Arizona nonprofit corporation, Plaintiff/Appellant,**

v.

**William S. CARR and Shay D. Carr, husband and wife; Sandra Packard, an unmarried woman, Defendants/Appellees.**

No. 2 CA–CV 95–0222.

Court of Appeals of Arizona, Division 2, Department A.

April 30, 1996.

Ethan Steele, Tucson, for Plaintiff/Appellant.

Gerald B. Hirsch, P.C. by Gerald B. Hirsch, Tucson, for Defendants/Appellees Carr.

Law Offices of Edmund D. Kahn by Edmund D. Kahn, Tucson, for Defendant/Appellee Packard.

## OPINION

PELANDER, Presiding Judge.

Plaintiff/appellant Sabino Town & Country Estates Association (Sabino) appeals from a judgment, entered after a bench trial, which rejected Sabino's claims that a deeded easement for ingress and egress over Sabino's property was terminated by abandonment or adverse possession. Sabino also appeals from the trial court's pre-trial order dismissing defendant Packard and awarding her attorney's fees. We affirm.

### FACTS AND PROCEDURAL HISTORY

Viewed in a light most favorable to sustaining the trial court's judgment, *Knapp v. Wise*, 122 Ariz. 327, 328, 594 P.2d 1023, 1024 (App.1979), the facts are as follows. In 1972 defendant Packard, the predecessor in interest of the defendants Carr, acquired real property east of Sabino Canyon Road. At that time Packard also acquired and recorded three deeds of perpetual easement of ingress and egress over a thirty-foot-wide strip of property running west from Packard's property to Sabino Canyon Road. The deeds of easement granted Packard, *inter alia,* "the free and uninterrupted use, liberty and privilege of, and passage in and along, [the thirty foot] strip of land," together with "[f]ree ingress, egress and regress" to and from Packard's property. By their terms, the deeds of easement "constitute[d] and cover[ed] a perpetual right-of-way to run with the land."

In 1976 Sabino created a subdivision west of Packard's property, between it and Sabino Canyon Road, by recording a plat map. The plat described a "common area" which included property within Packard's easement, but the plat map did not mention or show the easement. After creating the subdivision, Sabino erected and periodically maintained fencing around its common area, including a split rail wooden fence along its west side

and a barbed wire fence on its east side, within Packard's easement area. Although Sabino contends that its fencing was "specifically directed at excluding [motor vehicle] use" of the easement, Sabino does not challenge the trial court's finding that Sabino "fenced the common area to protect the desert landscape from intrusion by the public visiting the Sabino Canyon area."

Before and after Sabino erected the fences, the Packards had access to and used the easement property for hiking, jogging, horseback riding and occasional moped riding. Other subdivision residents, with Sabino's knowledge, also used the common area, including the easement strip, for hiking and equestrian travel. Sometime in the 1980s, Sabino created several small openings in the fences to allow people to pass through the common area to use trails for hiking and horseback riding.

From 1972 to 1993, the Packard family did not use the easement for ingress and egress, but rather only used Fenster School property, located to the south and west of Packard's residence, for those purposes.[1] Packard never developed any portion of the easement and, other than occasional moped riding, motor vehicles were not used on the easement. Nonetheless, Packard never knowingly abandoned any rights to the easement and never stopped using it.

In March 1993, Packard conveyed her property and the deeds of easement to Carr, who bought the property for the sole purpose of using it for a bed and breakfast business. Carr obtained authority to operate such a business on the property and began clearing and grading the easement area west of his property to facilitate ingress and egress. Sabino objected and, after complying with the notice requirements of A.R.S. § 12–1103(B), filed this suit to quiet title in September 1993.

In its complaint, Sabino alleged that, because of abandonment or non-use, defendants were "barred or forever estopped from having a claim or claiming any right or title to

---

1. In 1983 Packard and Fenster School executed an agreement which formally allowed Packard to use the school property for ingress and egress

south to Ocotillo Drive, but only for residential, not commercial, purposes.

the real property adverse to [Sabino] except for an equestrian easement over the north 30 feet thereof." After a bench trial, the trial court entered judgment for Carr based on its ruling that Sabino failed to carry its burden of establishing abandonment or prescriptive termination of defendants' deeded easement. This appeal followed.

## DISCUSSION

■ On appeal, Sabino acknowledges that it never "was adversely holding against pedestrian and equestrian uses on the easement," but contends "that the *scope* of the easement [was] *partially* extinguished—specifically, that motor vehicle use of the easement is now barred by Sabino's adverse possession against such use for a period of over ten years."[2] "An easement, whether acquired through grant, adverse use, or as an abutter's right, may be extinguished by the owner of the servient tenement by acts adverse to the exercise of the easement for the period required to give title to land by adverse possession," i.e. ten years. *Busby v. State*, 2 Ariz.App. 451, 453, 409 P.2d 735, 737, *judgment set aside and new trial order vacated*, 101 Ariz. 388, 420 P.2d 173 (1966). *See* A.R.S. § 12–526(A). In addition, "the scope of an easement may be altered when it is adversely possessed as to some uses, though it is not so possessed as to all uses." *Titcomb v. Anthony*, 126 N.H. 434, 438, 492 A.2d 1373, 1376 (1985); 3 Powell on Real Property, § 34.21 at 34–260 (1995).

■ To prove adverse possession of defendants' deeded easement, Sabino "had to show by clear and convincing evidence that its use was 'actual, open and notorious, hostile, under a claim of right, continuous for the statutory period [here, 10 years], and exclusive.'" *Inch v. McPherson*, 176 Ariz. 132, 135, 859 P.2d 755, 758 (App.1992), *quoting Rorebeck v. Criste*, 1 Ariz.App. 1, 4, 398 P.2d 678, 681 (1965). Because "[t]he owner of the servient estate claiming adverse possession of an easement already has the right to possess and use the land so long as that use is not inconsistent with the easement," *Mueller v.*

*Hoblyn*, 887 P.2d 500, 507 (Wyo.1994), Sabino also was required "to show by clear, positive and unequivocal evidence that [its] use of the easement was inconsistent with and antagonistic to [defendant's] right." *Busby*, 2 Ariz. App. at 454, 409 P.2d at 738.

■ The question of whether the elements of adverse possession have been established is "one of fact which must be determined from the circumstances of each case." *Kay v. Biggs*, 13 Ariz.App. 172, 175, 475 P.2d 1, 4 (1970); *Sevier v. Locher*, 222 Cal.App.3d 1082, 1086, 272 Cal.Rptr. 287, 290 (1990). "Just as the creation of an easement by prescription is not favored in the law, the termination of an easement by adverse possession is not favored." *Mueller*, 887 P.2d at 507. "There are no equities favoring the establishment of such a claim." *Chandler v. Jackson*, 148 Ariz. 307, 311, 714 P.2d 477, 481 (App.1986).

■ We view the evidence in a light most favorable to sustaining the judgment, which will not be disturbed if there is evidence supporting it. *Inch*, 176 Ariz. at 135, 859 P.2d at 758. In addition, it is the trial court's function to distinguish "between evidence which is clear and convincing and evidence which merely preponderates." *Id.*, *quoting Yano v. Yano*, 144 Ariz. 382, 384, 697 P.2d 1132, 1134 (App.1985). "We are bound by the trial court's findings of fact, unless they are demonstrated to be clearly erroneous, although not by the trial court's conclusions of law." *Chandler*, 148 Ariz. at 311, 714 P.2d at 481.

■ The undisputed evidence in this case established that from 1972 to 1993, Packard did not use or attempt to use the easement for regular ingress to, or egress from, her property, nor was the easement needed or used for motor vehicle travel. The evidence also was undisputed that, despite Sabino's fencing the east and west sides of its common area, Packard's family and others continued to use the area, with Sabino's knowledge and consent, for hiking, jogging, horseback riding and some moped riding. Packard's mere

---

**2.** Sabino does not challenge the trial court's ruling that defendants had not abandoned the easement.

non-use of the easement for motor vehicle ingress or egress does not establish Sabino's adverse possession. *See Kolouch v. Kramer,* 120 Idaho 65, 67, 813 P.2d 876, 878 (1991). *See also Squaw Peak Community Covenant Church v. Anozira Dev., Inc.,* 149 Ariz. 409, 414, 719 P.2d 295, 300 (App.1986) ("The law is well-settled that the owner of an easement created by express grant is under no duty to make use of the easement in order to retain his entitlement.").

■ When one claims title to property by adverse possession, fencing of the disputed property "is evidence of possession" and may be "sufficient to 'fly the flag' over the land and put the true owner on notice that his land is held under an adverse claim of ownership." *Knapp,* 122 Ariz. at 329, 594 P.2d at 1025. Several courts have held, however, that "where an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence the land and this will not be deemed adverse until such time as the need for the right-of-way arises and the owner of the dominant tenement demands that the easement be opened and the servient tenement owner refuses to do so." *Halverson v. Turner,* 268 Mont. 168, 175, 885 P.2d 1285, 1290 (1994). *See also Kolouch,* 120 Idaho at 68, 813 P.2d at 879; *Castle Assoc. v. Schwartz,* 63 A.D.2d 481, 487, 407 N.Y.S.2d 717, 723 (1978); *Beebe v. Swerda,* 58 Wash.App. 375, 384, 793 P.2d 442, 446 (1990); *City of Edmonds v. Williams,* 54 Wash.App. 632, 636, 774 P.2d 1241, 1244 (1989); *Mueller,* 887 P.2d at 509.

■ We adopt and apply that principle here but limit its application to cases like this involving claims of partial extinguishment of an easement's scope of use by adverse possession. In such cases, when an unrestricted, perpetual, recorded easement of ingress and egress has not been needed or used for that purpose, and when the owner of the dominant estate has had uncontested access to the easement and has continuously used it for other purposes, "the maintenance of a fence which obstructs [the] unused easement does not terminate the easement by adverse possession." *Mueller,* 887 P.2d at 509 (servient estate owner's actions in maintaining boundary fencing, growing crops and drilling water well did not terminate easement by

adverse possession). Under such circumstances, there must be a clear, unequivocal message from the servient estate's owner, beyond mere fencing, prohibiting any future use of the easement for ingress/egress. The easement holder should not be left to speculate as to whether an easement may be partially extinguished or its scope of future use limited. *See Shors v. Branch,* 221 Mont. 390, 720 P.2d 239 (1986) (installation of metal, locked gate across access road did not extinguish easement rights by adverse possession, where access to easement on foot, snowmobile or motorcycle could be achieved by going around the gate).

■ Before Carr purchased the property from Packard in 1993 for purposes of operating a bed and breakfast business, the easement was not developed, needed or used for ingress or egress purposes. Although Packard twice appeared before the Sabino Board in the early 1980s and informed it of the easement, she did not demand that the fencing be removed from that portion of Sabino's common area encompassing the easement, or that the easement be opened for motor vehicle use or for other ingress and egress purposes. Similarly, Sabino never refused any requests to do so.

Under these circumstances, Sabino's fencing of the easement up to 1993 was not adverse to defendants. A.R.S. § 12–521(A)(1); *cf. Leon v. Byus,* 115 Ariz. 451, 453, 565 P.2d 1312, 1314 (App.1977) (" 'Adverse' or 'hostile' as applied to possession of realty does not connote ill will or evil intent, but merely a showing that the one in possession of the land claims exclusive rights thereto and denies by word or act the owner's title."); 3 Powell on Real Property, § 34.21 at 34–261 to 34–264; Restatement of Property § 506 (1944). Neither Sabino's failure to expressly acknowledge the easement nor Packard's failure to take further steps to remove the fences, or to develop or use the easement for ingress/egress purposes, compelled a finding of adverse possession. In sum, we cannot say the trial court erred in finding that, other than erecting and periodically repairing the fencing within defendants' easement, Sabino "did nothing more to establish an adverse and hostile position to [Carr's] predecessor in interest," and concluding that Sabino "failed to carry [its] bur-

den on the theory of prescriptive termination of defendant's deeded easement."

██ Sabino contends, however, that "the undisputed evidence shows much more than Sabino's placement of a mere fence." For example, Sabino claims to have "posted signs stating that motor vehicles were prohibited in the common area." The only evidence relating to signs are references in Sabino Board minutes of September 1982 and November 1984, indicating the Board had decided to post "no trespassing with motorized vehicles" signs on Sabino's common property. Sabino's common area was approximately 400 feet wide and encompassed more than just the thirty-foot-wide easement strip. There was no evidence that any such signs were ever posted, let alone when or where, and no evidence that Packard ever saw or was aware of any such signs. In addition, although the November 1984 minutes noted that Sabino "should take pictures of the posted signs, in case they are torn down, as proof of having done this," none of the numerous photographs admitted at trial depicted any such signs. In short, Sabino's documented plans to post signs, without more, did not constitute clear and convincing evidence of adverse possession.

Finally, we do not address Sabino's contention that the trial court erred in dismissing defendant Packard before trial on the ground that she was not a proper party to this quiet title action, despite having retained a security interest in the property as beneficiary under a deed of trust executed by the Carrs. Assuming *arguendo* that the dismissal was in error, it is not reversible since the trial court ultimately rejected Sabino's claims, and therefore Packard would have prevailed had she remained a defendant through trial. Although the trial court's order of dismissal awarded Packard $1,800 in attorney's fees, Sabino has not challenged the basis for, or amount of, the attorney's fee award.

Affirmed.

LIVERMORE, J., and CHARLES E. ARES, Judge Pro Tem., concur.