[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATEMENT OF THE CASE
The plaintiff claims title by adverse possession to the parcel of land described as:
 "All that certain piece or parcel of land, with the buildings and all other improvements thereon, situated in the Town of Hamden, County of New Haven and State of Connecticut and bounded:
NORTH: by Briar Lane, 1.5 feet, more or less;
 EAST: by land now of Melvin Ember and Carol R. Ember, 150 feet More or less;
 SOUTH: by land now or formerly of Benjamin Spock, 4 CT Page 14589 feet, more or less;
WEST: by land now of George Fayen, 150 feet, more or less."
It is undisputed that this parcel is included in and is part of the property owned now and occupied by Melvin Carol Ember (See east bound in description above). Their predecessor in title were the Paul Hoffers.
The area in dispute lies along the plaintiffs rear boundary and he is in effect seeking to move his rear boundary over the boundary he shares with the defendants. Presently, the plaintiffs rear line and the defendant's side line are the same and run for 150 feet. (See east west bounds in description above).
The plaintiffs claim to this particular parcel derives from a single stretch of wooden stockade fencing which commenced four feet from the southerly terminus of the plaintiffs rear line and the westerly terminus of the defendant's rear line.
This structure extended roughly along the boundary line about 115 feet, ending about 35 feet from Brian Lane.
Thus the fence did not separate the properties of the plaintiff and the defendants. There is no evidence as to who erected the fence.
 STANDARD OF PROOF
It is the plaintiffs position that he has acquired title to the parcel in question by virtue of his having "ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession . . . without license or consent of the owner."
Adverse possession is not favored in law and to prevail, the claimant must prove his case by clear and convincing evidence. (Citations omitted).
 DISCUSSION I
The plaintiff alleges his adverse possession commenced in 1978 when he purchased his property. The defendants purchased their property in 1997, so they will have had their property reduced in area as a result of what had transpired before their arrival on the scene, should the plaintiff prevail. As a result of this circumstance, the evidence offered was CT Page 14590 virtually entirely from the plaintiff.
The plaintiff stated that when he purchased his property the fence referred to above was standing and he believed it to be on the boundary line. He thus proceeded to use the area on his side of the fence the same as the rest of the area. He planted bulbs, trees and decorative shrubs and watered and fertilized the plantings. He never spoke to his adjoining property owner and he said Dr. Hoffer never went into the disputed area.
The plaintiff related in detail the damage inflicted by the 1989 tornado which struck Hamden. While he claimed his cleanup efforts were primarily in the disputed area, the evidence does not support his claim, especially since the area in question measures four feet by a foot and a half, but is 150 feet in length.
Of particular note with respect to the tornado damage is the fact that in his conversation with Dr. Hoffer, he never mentioned his pursuit of an adverse possession theory or his claim that he owned the parcel in question. Surveying the damage, Dr. Hoffer is purported to have said "Boy, have you got a mess over there!" This was apparently offered to indicate that Hoffer was admitting that the property in question was the plaintiffs. An examination of the photos offered by the plaintiff strongly suggests that Hoffer was merely commenting on the fact that there was a lot of cleaning up to do on the plaintiffs side of the fence.
The court also notes that the plaintiff admitted on cross-examination that his first plantings were done in 1985 and that his testimony at trial as to his plantings was at variance with his earlier responses as to the dates and extent of the plantings. He claimed to have done more planting at trial than he stated previously.
It should be noted that the plaintiff's planting diagram, Exhibit B, shows no plantings beyond the point where the fence ended.
 II
At the request of the defendants and with the agreement of the plaintiff, the court visited the scene so as to get a first hand view of the area and the features described by the plaintiff and reflected in the exhibits.
While the fence in question has been removed, the court noted that the disputed area claimed by the plaintiff is barely distinguishable from its surroundings on both sides.
Other features, some presently visible, and others shown in the CT Page 14591 exhibits, strongly suggest that the fence was originally erected by a predecessor in title of the defendants The "finished side" of the fence faced the defendants' property and it was located on their side of the boundary line between the properties of these parties.
Visible within the disputed area where the fence commences, at its southerly end, is an old abandoned kerosene drum and a compost pile. The fence screens both of these items from view from the defendants' property and the fact that the fence is not parallel to the deed boundary line between the properties is strongly suggestive of the reason for the existence of the fence. The fence as erected permitted the defendants' predecessor access to the disputed area.
One additional observation as to the location of the fence is pertinent here. The plaintiff offered Exhibit A, a property survey prepared for him in April of 1999. However, in offering this exhibit the plaintiff stated this showed his property as it appeared on his deed, what it looked like, where the lines were and the general layout as of 1978.
This survey depicts the fence in dispute, but with one addition about which no other evidence was offered. This addition appears to be a portion of fence which begins where they court was told the fence ended and which runs at a right angle to the fence, a distance the court calculates from the survey at about ten feet into the property of the defendants. Since the plaintiff testified that when he repaired this fence after the 1989 tornado, he put it back in its former position as best he could, one must assume this additional segment was present in 1978. And, that being so, one must question the plaintiff's argument that he relied on the position of the fence to conclude it was the boundary between the properties. If that were so, one is left to ponder what happened to the "boundary line" where the fence turned a right angle.
 III
The defendants question the possession allegedly exercised by the plaintiff and argues it has not been exclusive and continuous. CitingMeshberg v. Bridgeport City Trust Co., 1 Conn. App. 10, (1983), where the court noted that sporadic use is not sufficient, they point out that the possession which was found to be deficient for an adverse possession claim included cutting grass, removing boulders and installing a 50 foot driveway. (Id. at 13).
In Sands Associates v. Rios, 6 Conn. App. 84 (1986), an adverse possession claim was rejected as not being "continuous and exclusive." The activity there dwarfs the alleged actions of this plaintiff and included clearing the area in dispute, maintaining a garden, raising pigs and CT Page 14592 chickens, constructing a garage, erecting a fence, etc.
It is also significant that in this case, the plaintiff described no control over the portion of the area in dispute which lies beyond the end of the fence to the street line. He describes the area he seeks by arbitrarily extending the fence line, but he has introduced no evidence to support his claim to this portion of the parcel in question. This section of the parcel narrows as it approaches the street line to one and half feet.
In his Exhibit A, the plaintiff shows a gap in the fence of about 30 feet. This was a portion of the fence destroyed in the 1989 tornado which was not restored. So, while the original placement of the fence permitted ready access to the disputed area, this 30 foot opening was additional evidence of a lack of exclusive possession. The mere existence of the fence for 15 yeas would not be sufficient to require a finding of adverse possession. Lowenberg v. Wallace, 147 Conn. 689, 699 (1960).
The plaintiff relies on Rorebeck v. Criste, 398 P.2d 678 (1965), a case involving a fence which traversed the two properties involved in the dispute. There, at page 681, the court stated:
 "Also, the testimony shows that such occupancy was open and notorious. The fence was an apparent separation of the property for all the world to see. The grazing of the cattle, irrigation and leasing of the property was notice to the world and particularly to the defendants that the plaintiff and her predecessors were treating this property as their property, and not as defendants' property."
Here, the plaintiff cannot rely on the fence as notice of his claim or an assertion of his exclusive possession.
The gaps in the fence, its termination 35 feet from the end of the property, and the vertical extension noted in Section II above, and the minimal activity conducted in the disputed area negate applicability of this case to Rorebeck.
The present case is also similar to the situation confronted by this court in a case cited by the defendants, Miller v. Onorato, 1996 WL 409226 (Conn.Super. 1996) where the claimant failed to depict an area which could have been delineated by the trier, even if the adverse possession elements were found.
The court concludes that the plaintiff has not sustained his burden CT Page 14593 that any possession he claims was exclusive and continuous for a 15 year period.
 IV
The defendants also argue that the plaintiff has not "openly" and "visibly" possessed the parcel in dispute. Our Supreme Court addressed this requirement in Robinson v. Myers, 156 Conn. 510 (1968), stating at page 518:
 "The requirement that an adverse possession be "notorious" in the sense of "being or constituting something that is commonly known: well known" (Webster, Third New International Dictionary) is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice." (Citation omitted).
The actions the plaintiff described and which constituted his assertion of "adverse possession "took place almost entirely behind the stockade fence he claims as the property line.
It is a basis requirement of one seeking to acquire title by adverse possession that he put the owner of the parcel he covets on notice of the claim.
 "Entry cannot be of a casual or secret character but must be either known to an owner or be made under such circumstances as to enable an owner, by the use of reasonable dingence, to ascertain the claim of the party making the entry, and thus enable him to resort to legal remedies for its protection."
 Zagray v. Ostrager, 1999 WL 711513 at **6, pg. 8, Conn. Super., (1999).
In addition, because of the physical nature of the total area along the boundary line of which the parcel in dispute was a mere sliver, it would have been unlikely that the Hoffers could or would have become aware of the plaintiffs claim.
 "The possession necessary to constitute an ouster under § 47-21 is not some fleeting or ephemeral technical invasion of the property nor the occasional technical invasion tolerated by adjoining neighbors on good terms with one another. Rather, it is possession CT Page 14594 of a character such that it would, if continued for the requisite period, ripen into a title by adverse possession. Robinson v. Meyer, supra."
 Lowenberg v. Wallace, supra, at 694.
Thus, it cannot be said the plaintiffs stated incursions over the actual boundary line was hostile in this inception and continued hostile for the required 15 years. Zagray, supra, at **6, citing Paton v.Robinson, 81 Conn. 547, 551 (1909).
Further, the plaintiffs failures to act in other ways consistent with his belief that the land was his is significant.
He never extended the partial fence to the street line, leaving about 35 feet open so the owners could cross over and go behind the fence. After the 1989 tornado, at least one substantial gap in the fence was left vacant. At no time, were the Hoffers or the Embers told of the plaintiff's claim to the parcel, nor were they told to stay off the parcel claimed. As noted above, they were never physically excluded by fence, barrier, or even a sign.
The plaintiff has not proved the essential elements of open and visible conduct with notice to the owner of the claimed property.
 V CONCLUSION
In view of the plaintiffs failure to sustain his burden of proof as noted above, judgment may enter for the defendants, settling title to the area in dispute described in the Statement of the Case in them and precluding the plaintiff from entering into or upon such parcel, or in any way interfering with the defendants' title, use and enjoyment thereof.
The lis pendens filed on the land records in the town of Hamden is ordered released forthwith.
The defendants are entitled to their taxable costs.
 Anthony V. DeMayo Judge Trial Referee