# Fletcher Lumber Co. v. Fordson Coal Co.

June 21, 1949.
Rehearing denied October 25, 1949.

Bailey P. Wootton for appellant.

Will H. Lewis for appellee.

VAN SANT, COMMISSIONER—Reversing.

The action was instituted by appellee to recover damages for the wrongful cutting of timber on lands allegedly owned by it, and to enjoin appellant from continuing its timber operation thereon. Appellant asserted its right to cut the timber by reason of a contract with the Vizzard Investment Company, Incorporated;

and, in the answer, alleged that the Vizzard Company is the owner of the lands on which appellant claims the right to cut the timber. We will refer to appellant as the Lumber Company, appellee the Coal Company, and appellant's lessor, the Vizzard Company. The latter was not made a party to the suit.

The Lumber Company claims by adverse possession and by record title through "The Wilson Patent" and "The Jeffries Patent"; whilst the Coal Company claims under six patents issued to William DeGroot and others. We will refer to the six DeGroot Patents as one, and designate them "The DeGroot Patent." "The Wilson Patent" and "The DeGroot Patent" were issued in the year 1870, "The Wilson Patent" being the senior. "The Jeffries Patent" was issued in the year 1890 and, of course, is junior to each of the other patents. We will discuss the record title first; and, since the property in question is composed of two noncontiguous tracts we will designate the more northerly "Trace Number 1" and the more southerly "Tract Number 2."

The evidence in respect to the extent of the boundary described in "The Wilson Patent" conclusively shows to our mind that no part of "Tract Number 1" is included therein. This evidence, though disputed, is uncontradicted, and shows the southern boundary of "Tract Number 1" to be contiguous with, but not overlapped by, the northern boundary of the land embraced in "The Wilson Patent." To reach a contrary conclusion would require altering both courses and distances in the calls for the northern boundary of the land described in "The Wilson Patent." The description of the property granted in "The DeGroot Patent" includes all of "Tract Number 1." The property described in "The Jeffries Patent" overlaps that described in "The DeGroot Patent," and includes "Tract Number 1;" but since "The Jeffries Patent" is junior to "The DeGroot Patent" it is void as to the overlap. KRS 56.190. A tedious recitation of the various calls in the three patents in respect to "Tract Number 1" would mean little or nothing to one who does not have before him the entire record of the testimony, patents, and surveys. For this reason we will dispense with such recitation and declare, ipse dixit, that the evidence conclusively shows the Coal Company to be the holder of the record title to this tract.

Our task in respect to ascertaining the holder of the legal title to the property embraced in "Tract Number 2" is not so free of difficulty. We find ourselves to be faced with almost insurmountable barriers in attempting to arrive at either of the conclusions contended for. At the outset we are sure of this hypothesis: The land in question is embraced in "The DeGroot Patent," by reason of which fact the Coal Company would hold the record title to it, unless it likewise is embraced in "The Wilson Patent," in which latter event, the Lumber Company would be the holder of it. Thus, in our independent review of the case, the question may be resolved only by determining from the evidence, if we can, the location of that portion of the eastern boundary of the property granted by "The Wilson Patent" which the draftsman of that instrument attempted to fix by the last two calls in the description therein contained.

The tract is in the shape of a triangle, and it is agreed by the parties that the northern apex of the triangle is the first corner of the land described in "The Wilson Patent," most of which lies in a general westerly and southerly direction from the beginning corner. The 9th corner of "The Wilson Patent" is agreed upon, and is almost directly south of the beginning corner. The land in question lies to the east of a straight line drawn from the 9th corner to the beginning corner. It is the contention of the Lumber Company that the last two calls of the property described in "The Wilson Patent" constitute the southern and eastern limits of the boundary in dispute, whilst it is the contention of the Coal Company that the last call of "The Wilson Patent" constitutes the western side of the boundary in dispute. We will start with the 9th corner of "The Wilson Patent," the location of which has been agreed on by the parties. This likewise is the beginning corner of a tract of land patented by George Hoskins lying to the east of "The Wilson Patent" and south of "The DeGroot Patent." The call for the 10th corner in "The Wilson Patent" reads:

"thence with said (Hoskins) line and divide N. 100 poles to a stake, a corner to said 100 acres (The Hoskins Tract);"

The last call reads:

"thence north 10 W. 100 poles to the beginning."

The Coal Company arrived at its location of the line by attempting to survey the Hoskins tract which has five corners. It then ran the call from the 9th to the 10th corner of "The Wilson Patent" with the closing call of the Hoskins tract and fixed the 10th corner of "The Wilson Patent" at the 5th corner of "The Hoskins Patent." This method of fixing the 10th corner of "The Wilson Patent" falls forty-five poles short of the distance called for. From the 10th corner so located the Coal Company closed "The Wilson Patent" by surveying a straight line to the known point of beginning. The line so located measures 225 poles instead of the 100 poles called for in the patent, and runs a course north one degree east instead of north ten degrees west called for in the patent. However, it should be mentioned that correction for variation in the magnetic needle alters the north ten degree west course to north 5½ degrees west. The Lumber Company located the 10th corner by starting at the known point of beginning, reversing the course of the last call of "The Wilson Patent," and running the line of that course to its intersection with the divide referred to in "The Wilson Patent." It then followed the divide to the agreed location of the 9th corner. This method places the 10th corner at approximately (within five poles of) the distance from the 9th corner called for by "The Wilson Patent," but requires extending the closing line of "The Wilson Patent" from 100 poles to 185 poles.

Thus, it will be seen that the Coal Company survey makes a substantial change in distance (45 poles) from the 9th to the 10th corner and a substantial change in both course and distance in the call from the 10th to the beginning corner; whereas the fixation of the lines located by the Lumber Company does not call for any alteration in the course or distance between corners 9 and 10 and does not require any change in the course of the closing line as called for in "The Wilson Patent," however, it does require an extension in distance in the closing line from 100 poles to 185 poles. The Coal Company surveyor, in locating the corners of "The Hoskins Patent," made one inconsequential and two substantial alterations in distances and one substantial alteration in the course of the line from the 2nd to the 3rd corner. To adopt the contention of the Coal Company, we would have to countenance four substantial alterations in dis-

tances and two substantial alterations in courses in the two surveys; but to adopt the Lumber Company's contention we will have to countenance only one change, and that in distance alone. Thus the margin of error in the Coal Company's survey is greater by far than that in the Lumber Company's survey. For this reason we are of the opinion that the Court erred in declaring the Coal Company to be the owner of "Tract Number 2." Although we do not deem it sufficiently important to influence the decision, it is interesting to note that the Coal Company survey would create a triangular gap of unclaimed land between the lands of "The Wilson Patent," "The Hoskins Patent," and "The DeGroot Patent," whereas this gap is included in "The Wilson Patent" in the Lumber Company's survey.

There remains for our determination the contention of the Lumber Company that it has acquired title to "Tract Number 1" by adverse possession. The evidence shows that the Lumber Company has leased this land to at least three tenants continuously from the year 1910 to the time of the filing of this action in the year 1939. But leasing in itself is not sufficient to constitute possession of a junior patentee on the land of a senior patentee. One having the legal title to property may possess it constructively, and at all times does so. The law views him as standing upon his property and every part of it until a trespasser disseizes him by taking actual, open, exclusive, and notorious possession adverse to the claim of the lawful owner. When such a trespasser continuously shall have disseized the lawful owner in the manner above described for a period of fifteen years, title to the land ripens in the name of the disseizor. If, however, the disseizor relinquishes his actual possession by "stepping off" the property, even for a moment, within the fifteen year period, the continuity of the trespasser's possession thereby is broken and he must "step back" to commence again. Flinn v. Blakeman, 254 Ky. 416, 71 S. W. 2d 961. Mere occasional entry by a junior patentee, either in person or by his tenant, does not satisfy the rule as to continuity of possession. Federal Gas, Oil, and Coal Company v. Harmon, 254 Ky. 255, 71 S. W. 2d 630. The adverse possession relied on by the Lumber Company is through the tenants under its various contracts of lease. The evidence for the Lumber Company itself shows the actual possession by the

tenants to have been sporadic. The tenants would till the land a year or so, abandon it for a year or two, then return, retill, and reabandon. The cultivated land was enclosed by a picket fence which was maintained to turn stock while the land actually was under cultivation, but a part of which was ''laid down,'' permitting cattle to enter thereon at random, during the years it actually was not in cultivation. Such occasional possessions did not ripen into title, and the Chancellor properly adjudged the Lumber Company to have been trespassers on ''Tract Number 1,'' and to be liable to the Coal Company for the value of the timber cut from that tract; and he correctly enjoined the Lumber Company from continuing to trespass thereon.

But we think the Chancellor to have been without authority to declare the Coal Company to be the owner of ''Tract Number 1,'' because the Vizzard Company was not a party to the suit and it does not appear in the record that it actually defended its title by representation. Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062.

Wherefore the judgment is reversed with directions that it be set aside and that another be entered in conformity with this opinion.