**Chester PHILLIPS; Barbara Phillips; Juanita Phillips; Paul Phillips; and Blanche Phillips, Appellants,**

v.

**Arthur Bill AKERS and Sylvia Akers, Appellees.**

**No. 2001–CA–001235–MR.**

Court of Appeals of Kentucky.

Aug. 30, 2002.

Discretionary Review Denied by Supreme Court May 15, 2003.

Case Ordered Published by Supreme Court May 15, 2003.

John W. Thacker, Pikeville, KY, for appellant.

Lawrence R. Webster, Pikeville, KY, for appellees.

Before BARBER, BUCKINGHAM, and COMBS, Judges.

*OPINION*

BUCKINGHAM, JUDGE.

Appellants, Chester Phillips, Barbara Phillips, Juanita Phillips, Paul Phillips, and Blanche Phillips, appeal from the findings of fact, conclusions of law, and judgment of the Pike Circuit Court, which rejected their claim of adverse possession and quieted title in Arthur Bill Akers and Sylvia Akers, his wife, to certain disputed realty in Pike County. Finding no error, we affirm.

Chester, Barbara, Juanita, and Paul Phillips are the children of John and Fannie Phillips.[1] Arthur Bill Akers is the nephew of John Phillips and first cousin of the appellants. On June 1, 1963, Hester Johnson, who was John Phillips' sister, conveyed a twenty-five-acre tract denominated as Lot # 6 on Island Creek in Pike County to John and Fannie Phillips. At the time, Hester lived in a house on the tract with her daughter Nancy. However, Hester was unable to make the required payments on the mortgage associated with the property, so John took title to the property, assumed the debt on the mortgage note, and made monthly payments on it through June 1964.

On April 4, 1964, Hester Johnson and John and Fannie Phillips executed a warranty deed conveying Lot # 6 to Arthur Bill and Sylvia Akers.[2] Despite the conveyance to the Akers, on November 13, 1965, John and Fannie Phillips executed a warranty deed conveying approximately a one-fourth acre portion of Lot # 6 on which the residence was located to Hester Johnson. Hester and her daughter Nancy (Johnson Akers) continued to live in the house on this tract until 1997. In 1973, Arthur Bill and Sylvia Akers conveyed their oil and gas mineral rights to Lot # 6 to Nancy Johnson Akers.

In 1982, John Phillips died and his will was entered into probate. Although he did not own record title to it, Phillips bequeathed Lot # 6 to his two sons, Chester and Paul. On July 19, 1989, the appellants executed a deed conveying the oil and gas mineral rights to Lot # 6 to the Akers.[3] In 1996, Nancy Johnson Akers spoke with the Phillipses about purchasing Lot # 6. While searching the title, she discovered the 1964 deed to the Akers, which caused the Phillipses to reassess their ownership rights in the property and eventually culminated in the present lawsuit.

On March 1, 2001, the trial court conducted a bench trial. The evidence indicated that John Phillips had a garden for a period of time on Lot # 6, that he cleared vegetation and cut firewood on the lot, that he told others that he owned the property,

---

1. Blanche Phillips is Paul Phillips' wife.

2. It is unclear why Hester Johnson was a party to this conveyance given the fact that she had transferred her interest in the property to John and Fannie Phillips less than a year earlier in June 1963.

3. The evidence and testimony on the chain of title to the mineral and gas rights to Lot # 6 is unclear. While not providing any specificity, Barbara Phillips testified that title to the mineral rights changed ownership several times.

and that the Phillipses had paid taxes on the property. Several witnesses testified that John Phillips allegedly gave permission to several persons to live on the property in trailers in exchange for rental payments. One of these individuals, Fred Phillips, was on the property more than a very short period of time. Fred Phillips lived there between approximately May 1979 and June 1995, paying monthly rent to John Phillips and then to Barbara Phillips after her father's death.

Arthur Bill Akers testified that he purchased Lot # 6 from John Phillips in 1964 and was not aware that the Phillipses had asserted ownership rights after that time. He stated that he did not object to Fred Phillips living on the property without compensating him because Fred was his first cousin and needed help. Arthur Bill said that because he owned several pieces of realty and paid several tax bills each year, he believed that he had been paying taxes on Lot # 6 since 1964. Once the fact arose that the Phillipses had been paying the taxes, Arthur Bill contacted the county property value administrator and began paying the taxes in 1996. After hearing the testimony, the trial court held that the Phillipses had not presented sufficient evidence of adverse possession and quieted title to the Akers. The Phillipses have appealed this judgment.

■■■ The basic elements of adverse possession are well-established. In order to establish title through adverse possession, a claimant must show possession of disputed property under a claim of right that is hostile to the title owners interest. Further, the possession must be shown to be actual, open and notorious, exclusive, and continuous for a period of fifteen years. *Tartar v. Tucker*, Ky., 280 S.W.2d 150, 152 (1955); *Creech v. Miniard*, Ky., 408 S.W.2d 432, 436 (1965); KRS 413.010. "The 'open and notorious' element requires

that the possessor openly evince a purpose to hold dominion over the property with such hostility that will give the non-possessory owner notice of the adverse claim." *Appalachian Regional Healthcare, Inc. v. Royal Crown Bottling Co.*, Ky., 824 S.W.2d 878, 880 (1992)(citing *Sweeten v. Sartin*, Ky., 256 S.W.2d 524, 526 (1953)). Mere intentions or verbal expressions of a claim to property is not sufficient absent physical acts appearing on the land evidencing a purpose to hold the property hostile to the rights of and giving notice to the title holder. *See Gatliff Coal Co. v. Lawson*, Ky., 247 S.W.2d 375, 377 (1952); *Warfield Natural Gas Co. v. Ward*, 286 Ky. 73, 149 S.W.2d 705 (1940); *D.B. Frampton & Co. v. Saulsberry*, Ky., 268 S.W.2d 25 (1954). Absent proof that the possessor made physical improvements to the property, such as fences or buildings, there must be proof of substantial, and not sporadic, activity by the possessor. *See Kentucky Women's Christian Temperance Union v. Thomas*, Ky., 412 S.W.2d 869, 870 (1967); *Price v. Ferra*, Ky., 258 S.W.2d 460, 461 (1953)(cutting of timber from time to time over forty years not sufficient adverse possession); *Marsee v. Colson*, 307 Ky. 328, 210 S.W.2d 952, 953 (1948)(same).

■■■ While occupancy of realty represents actual possession, it must be adverse or hostile to the rights of the title owner, and possession by permission cannot ripen into title no matter how long it continues. *See, e.g., United Hebrew Congregation of Newport v. Bolser*, 244 Ky. 102, 50 S.W.2d 45 (1932); *Mills' Adm'x v. Mills*, Ky., 265 S.W.2d 458 (1954). The requirement of actual possession may be satisfied on behalf of the adverse claimant by possession or occupancy by his tenant or lessee. *See Fletcher Lumber Co. v. Fordson Coal Co.*, 311 Ky. 19, 223 S.W.2d 175, 177–78 (1949); *Flinn v. Blakeman*, 254 Ky. 416, 71 S.W.2d 961, 973–74 (1934), overruled on

other grounds by *Warfield Natural Gas Co. v. Ward,* 286 Ky. 73, 149 S.W.2d 705 (1940); *Wilder v. Lee,* 304 Ky. 144, 200 S.W.2d 153 (1947). However, the tenant's activity must satisfy all of the elements of adverse possession. *Id. See also Ford Motor Co. v. Potter,* Ky., 330 S.W.2d 934, 938 (1959).

 Payment of taxes may strengthen the payor's claim that he believed he owned certain property but is not itself sufficient to show possession or an intent to hold the property adversely. *See Sweeten, supra* at 526; *Warfield Natural Gas Co., supra* at 713. For instance, the occasional cutting of timber or the mowing of grass even along with payment of taxes has been held insufficient adverse holding to acquire title by adverse possession. *See Noland v. Wise,* Ky., 259 S.W.2d 46, 48 (1953); *Vaughan v. Holderer,* Ky., 531 S.W.2d 520, 522 (1975).

 The party claiming title through adverse possession bears the burden of proving each element by clear and convincing evidence.[4] *Commonwealth, Dep't of Parks v. Stephens,* Ky., 407 S.W.2d 711, 713 (1966); *Flinn v. Blakeman, supra* at 970. With respect to property title issues, the appropriate standard of review is whether or not the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error. *Church and Mullins Corp. v. Bethlehem Minerals Co.,* Ky., 887 S.W.2d 321, 323 (1992), *cert. denied,* 514 U.S. 1110, 115 S.Ct. 1962, 131 L.Ed.2d 853 (1995). Furthermore, in an action tried without a jury, the factual findings of the trial court shall not be set aside unless they are clearly erroneous, that is not supported by substantial evidence. *Cole v. Gilvin,* Ky.App., 59 S.W.3d 468, 472 (2001); CR 52.01.

The Phillipses challenge the trial court's failure to grant them title to Lot # 6 based on adverse possession. They contend John Phillips and his heirs exercised exclusive possession of Lot # 6 adverse to the rights of the Akers. The trial court found the Phillipses did not establish actions of possession that were open, hostile, actual and notorious for the requisite fifteen-year statutory period. We agree.

While the Phillipses presented several facts to support their position, much of their evidence lacks the necessary specificity as to duration, hostility, actual possession, and notoriety. Unquestionably, several facts demonstrate the Phillipses' intent to claim title to Lot # 6 such as the payment of taxes, the 1965 conveyance from John and Fannie Phillips to Hester Johnson of the portion of Lot # 6 containing the homestead, the devise of Lot # 6 by John Phillips in his will to his sons, and the oral statements of ownership by John Phillips. However, the actions of the Phillipses were not sufficient to put the Akers on notice of an adverse claim to the property.

 First, the Phillipses' witnesses testified that John Phillips cleared vegetation and planted a garden on the tract but they did not state how often or the exact time period. In fact, Nancy Johnson Akers and Barbara Phillips stated that John Phillips' activity on the property ceased prior to 1979, when Fred Phillips began living on the lot. Thus, these actions may not have continued for a fifteen-year period and in any event were only sporadic and not sufficiently notorious. Furthermore, as the trial court noted, the docu-

---

**4.** The Kentucky Supreme Court has declined to define the term "clear and convincing evidence" other than to say it is greater than a preponderance and less than beyond a reasonable doubt. *Fitch v. Burns,* Ky., 782 S.W.2d 618, 622 (1989).

mentary evidence on tax payments covered only eight years consisting of 1964, 1965, 1984, 1986, 1989, and 1992–94. Only the payments in 1964–65 clearly applied to Lot # 6. Even assuming the payments were for Lot # 6, the combination of the tax payments and sporadic clearing of the land was not sufficient evidence of hostile possession.

The Phillipses rely heavily on the evidence that several persons lived on the lot ostensibly under rental agreements with them. The evidence indicated that persons referred to as Slone, Snodgrass, and Clemet Adams may have had trailer homes on the property at various times, but their occupancy was for only very short periods of time. The Phillipses emphasize that Fred and Linda Phillips lived in a trailer on the lot and paid the Phillipses rent between 1979 and 1995. While an adverse claimant generally may use the occupancy of a tenant to satisfy the requirements of open, notorious, and actual possession, the situation in this case is somewhat unique given the familiar relationships of the parties. Several courts have recognized that possession by family members can rebut an inference of a hostile holding. *See, e.g., Frazier v. Morris,* 161 Ky. 72, 170 S.W. 496, 498 (1914)(citing *Mounts v. Mounts,* 155 Ky. 363, 159 S.W. 818 (1913)); *Chandler v. Jackson,* 148 Ariz. 307, 714 P.2d 477 (Ct.App.1986)(involving cousins); *Petsch v. Widger,* 214 Neb. 390, 335 N.W.2d 254 (1983); *Cole v. Gilvin, supra* (involving prescriptive easement); 3 Am.Jur.2d *Adverse Possession* 180 (2d ed.2002). Stronger evidence of hostile possession with a clear, positive assertion of an adverse right is required where there is a family relationship between the parties than where there is no such relationship.

In the current case, Fred Phillips was Arthur Bill Akers' first cousin. Arthur Bill testified that he allowed Fred to live on the lot because they were cousins and he knew that Fred was having financial problems. There is no clear evidence that the Akers even knew that Fred was paying rent to the Phillipses or that they considered Fred's occupancy to be adverse to their title. The trial court held that Fred's use of the property was permissive and not hostile to the Akers. Under the circumstances, we cannot say this finding was clearly erroneous.

In conclusion, we hold that the Phillipses did not establish by clear and convincing evidence all of the elements of adverse possession for the requisite continuous fifteen-year period. The trial court's decision rejecting the Phillipses' claim of ownership through adverse possession and quieting title to the disputed property in the Akers was not clearly erroneous or an abuse of discretion.

For the foregoing reasons, we affirm the judgment of the Pike Circuit Court.

ALL CONCUR.