**PAM I, LLC, Individually and/or d/b/a Quality Inn Motel, Appellant**

v.

**ELMO GREER & SONS, LLC; Travelers Casualty and Surety Company; and MIG Management, LLC, Appellees**

NO. 2014–CA–002076–MR

Court of Appeals of Kentucky.

RENDERED: MAY 27, 2016; 10:00 A.M.

---

Briefs for Appellant: John T. Aubrey, Manchester, Kentucky,

Brief for Appellee, Elmo Greer & Sons, LLC: Michael A. Barnett, Michael P. Casey, Lexington, Kentucky

BEFORE: COMBS, D. LAMBERT, AND VANMETER, JUDGES.

*OPINION*

VANMETER, JUDGE:

Long-standing Kentucky case law recognizes a tenant's right to sue for damages to its leasehold interest. The issue we resolve in this case is whether the Laurel Circuit Court erred in dismissing PAM I, LLC's, claim against Elmo Greer & Sons, LLC, for damages allegedly caused by the latter's blasting on the basis that PAM had no standing to bring the claim. We hold the trial court did err, vacate its summary judgment, and remand to that court for further proceedings.

## I. Factual and Procedural Background.

PAM filed this action in 2009 alleging that on April 5, 2007, it had leased from MIG Management, LLC, property on which a Quality Inn motel was located. PAM further alleged that it had an option to purchase the property, although, throughout the lengthy proceedings in the trial court, PAM apparently never exercised the option in question. PAM alleged that Greer had conducted blasting in the area during 2006–07 such that the property was damaged.[1]

Greer filed repeated motions for summary judgment on the basis that as a lessee, PAM did not have standing to bring an action for damages to the property and that only MIG, as the owner/lessor, could bring such an action. The trial court granted summary judgment, dismissing PAM as a party, ruling

Greer in its motions to dismiss and for summary judgment [has] consistently argued that PAM lacks standing to

---

1. Various pleadings in the record differ on whether the blasting occurred before or after MIG and PAM entered into their agreement. Since the trial court decided its summary judgment on the narrow legal basis of a tenant's standing to bring a cause of action for damages, we do not consider the timing of any blasting.

bring and maintain this action. This argument is based on PAM's lack of an ownership interest in the subject premises. Indeed, the law views the landlord as constructively occupying the entire premises when it is in the possession of a lessee. *See Fletcher Lumber Co. v. Fordson Coal Co.,* [311 Ky. 19, 23], 223 S.W.2d 175, 177–78 (1949). The claims seeking damages for injury to the real property are thus properly brought by the record owner of the real property at issue.

PAM, having failed to show any proof beyond its own allegations that it has standing by virtue of any ownership interest ... cannot meet its burden as stated in *Wymer* [*v. J.H. Properties, Inc.,* 50 S.W.3d 195 (Ky.2001) ]. As it is impossible for a party who lacks standing to produce evidence allowing a trier of fact to find in its favor, summary judgment is appropriate here as to the damage to the real property.

After PAM's motion to alter, amend or vacate was denied, this appeal followed.

## II. Standard of Review.

CR [2] 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 483 (Ky.1991) (internal quotations omitted). Whether summary judgment is appropriate is a legal question involving no factual findings, so a trial court's grant of summary judgment is reviewed *de novo.*

**2.** Kentucky Rules of Civil Procedure.

*Coomer v. CSX Transp., Inc.,* 319 S.W.3d 366, 370–71 (Ky.2010).

When a party's standing is challenged, "every well-pleaded allegation of the complaint must be taken as true and construed in the light most favorable to the party against whom the motion is made." *City of Louisville v. Stock Yards Bank & Trust Co.,* 843 S.W.2d 327, 328 (Ky.1992) (citing *Gall v. Scroggy,* 725 S.W.2d 867 (Ky.App.1987)). On review, an appellate court confines "itself to a determination of whether the matters alleged in the complaint establish appellant's standing to bring the action or whether it is without a 'substantial interest' in the subject matter of the controversy." *Stock Yards,* 843 S.W.2d at 328 (citing *Winn v. First Bank of Irvington,* 581 S.W.2d 21, 23 (Ky.App.1978)). In *Winn,* the court noted that "standing to sue ... is the right to relief." *Id.*

In *Stock Yards,* the Kentucky Supreme Court noted "[p]revailing Kentucky authority establishes the standard for standing to sue as 'a judicially recognizable interest in the subject matter.' The interest may not be 'remote and speculative,' but must be a present and substantial interest in the subject matter." 843 S.W.2d at 328–29 (quoting *HealthAmerica Corp. of Kentucky v. Humana Health Plan, Inc.,* 697 S.W.2d 946 (Ky.1985); *Winn, supra*). The Court further "recognized the difficulty of formulating a precise standard to determine whether a party has standing and held that the issue must be decided on the facts of each case." 843 S.W.2d at 329.

## III. Issue on Appeal.

As noted, the trial court dismissed this case on grounds that PAM lacked standing to bring it. Its decision was based on the narrow legal ground that

PAM was merely a tenant of the property, had submitted no proof of an ownership interest in the property other than the 2007 lease, and, by virtue of the decision in *Fletcher*, MIG was the sole entity which could bring a claim for damage to the property.

The trial court's decision ignores long-standing Kentucky case law which, conversely, recognizes the right of a tenant to bring an action for damages. In *Walden v. Conn*, 84 Ky. 312, 1 S.W. 537 (1886), Kentucky's highest court held:

> It is a well-settled rule that, when a contract of tenancy is consummated by the entry of the tenant, the exclusive right of possession is thereby instantly changed from the landlord to the tenant during his term, and for any injury to that possession the right of action is exclusively in him. This is so whether he retains the possession or not, because it is his exclusive right of possession that gives him the exclusive right of action for any injury done to it either by the landlord himself or a stranger during the existence of that exclusive right. During the continuance of the tenant's right of possession, the landlord has no right of action for any injury done to it by a stranger, or the tenant himself.

84 Ky. at 314, 1 S.W. at 538. The facts in *Walden* were that the landlord brought the action for trespass by a neighbor who put up a fence without his tenant's permission, thereby depriving the landlord and the tenant of the use and possession of the land. The Court of Appeals upheld the trial court's directing a verdict for the neighbor, dismissing the petition since the landlord had no right of action during the term of the tenant's right of possession. *Id.*

The rule set out in *Walden*, recognizing a tenant's right of action for damages to its leasehold interest, has been followed in a number of cases. In *Louisville & E.R. Co.*

*v. Hardin*, 117 S.W. 381 (Ky.1909), the court upheld a judgment in favor of a tenant's right to recover for damages to his possession which had occurred as a result of a contract the landlord had made with a railroad to construct its right of way. The court held

> The [tenant] was in possession of the farm under a contract of lease from the owner, and while the [railroad] had a right to go through the farm and build its roadway, still it was required to do this without unnecessarily injuring the tenant in possession. It had no right to build its roadway in front of his house without furnishing him a reasonable way to come and go from and to his dwelling, and, if it failed in this regard, he was entitled to a fair remuneration for the inconvenience sustained. Nor could it lawfully tear down the fences and expose the tenant's growing crops to the ravages of wandering cattle without being answerable to him for the damage done.

117 S.W. at 382. *See also Louisville & N.R. Co. v. Williams*, 245 Ky. 466, 53 S.W.2d 751, 752 (1932) (holding that a tenant has a right of action for any injury to his possession); 49 Am.Jur.2d, *Landlord and Tenant* § 428 (stating that "[a] tenant may sue a third person for trespass or other torts upon the tenant's estate[ ]") (footnotes omitted).

*Fletcher*, relied upon by the trial court and cited by Greer, does not compel a different result. The issue in *Fletcher* involved a dispute over ownership of land on which timber had been cut. The full passage providing the "authority" relied upon is the following:

> There remains for our determination the contention of the Lumber Company that it has acquired title to "Tract Num-

ber 1" by adverse possession. The evidence shows that the Lumber Company has leased this land to at least three tenants continuously from the year 1910 to the time of the filing of this action in the year 1939. But leasing in itself is not sufficient to constitute possession of a junior patentee on the land of a senior patentee. One having the legal title to property may possess it constructively, and at all times does so. The law views him as standing upon his property and every part of it until a trespasser disseizes him by taking actual, open, exclusive, and notorious possession adverse to the claim of the lawful owner. When such a trespasser continuously shall have disseized the lawful owner in the manner above described for a period of fifteen years, title to the land ripens in the name of the disseizor. If, however, the disseizor relinquishes his actual possession by "stepping off" the property, even for a moment, within the fifteen year period, the continuity of the trespasser's possession thereby is broken and he must "step back" to commence again. *Flinn v. Blakeman,* 254 Ky. 416, 71 S.W.2d 961 [ (1934) ]. Mere occasional entry by a junior patentee, either in person or by his tenant, does not satisfy the rule as to continuity of possession. *Federal Gas, Oil, and Coal Company v. Harmon,* 254 Ky. 255, 71 S.W.2d 630 [ (1934) ]. The adverse possession relied on by the Lumber Company is through the tenants under its various contracts of lease. The evidence for the Lumber Company itself shows the actual possession by the tenants to have been sporadic. The tenants would till the land a year or so, abandon it for a year or two, then return, retill, and reabandon. The cultivated land was enclosed by a picket fence which was maintained to turn stock while the land actually was under cultivation, but a part of which was "laid down", permitting cattle to enter thereon at random, during the years it actually was not in cultivation. Such occasional possessions did not ripen into title, and the Chancellor properly adjudged the Lumber Company to have been trespassers on "Tract Number 1", and to be liable to the Coal Company for the value of the timber cut from that tract; and he correctly enjoined the Lumber Company from continuing to trespass thereon.

311 Ky. at 23–24, 223 S.W.2d at 177–78. A careful reading of this passage shows that the lumber company attempted to argue that its lease of the disputed property to its tenants constituted the requisite "actual, open, exclusive, and notorious possession" even though those tenants did not continuously occupy the property. The issue in *Fletcher,* thus, was whether the sporadic possession by the lumber company, or *its* lessees (not the lessees of the rightful owner, the coal company) was sufficient to constitute the requisite "actual, open, exclusive, and notorious possession adverse to the claim of the lawful owner[,]" and thereby establish that the lumber company's adverse possession claim prevailed over the legal title/constructive possession of the coal company. The holding in *Fletcher* does not in any way bear upon whether a tenant has standing to bring a cause of action for damages to a leasehold estate.

## IV. Conclusion.

The Laurel Circuit Court's summary judgment dismissing PAM I, LLC's claim is vacated, and this matter is remanded to

that court for further proceedings.[3]

ALL CONCUR.

---

**3.** Greer moved this court to strike PAM's reply brief, alleging that it included new arguments not previously briefed. In an order dated May 19, 2016, we denied that motion.