RENDERED: APRIL 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1086-MR

BENNY RAY BAILEY AND
LAVONNA BAILEY                                                  APPELLANTS


                    APPEAL FROM KNOTT CIRCUIT COURT
v.              HONORABLE ALISON C. WELLS, SPECIAL JUDGE
                    ACTION NO. 18-CI-00051


DENNIS JONES; ANNA JONES;
ARTHUR JONES, JR.; BILLY GLENN
JONES; ELSIE JONES; HAGEN
JONES; JAMES S. LONG; JEWELL
JONES; RAY PRATT; SARAH
PRATT; AND VIRGINIA LONG                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND McNEILL, JUDGES.

McNEILL, JUDGE: Benny Ray Bailey and Lavonna Bailey ("Baileys") appeal

from the Knott Circuit Court's June 20, 2019 findings of fact, conclusions of law,

and judgment finding they have no ownership interest in certain real property located in Hindman, Kentucky. Finding no error, we affirm.

This is an action to quiet title to a triangular piece of property ("disputed property") located along the shared boundary line of the Baileys and appellee, Dennis Jones ("Dennis"). Currently located on the property is a metal pole barn, which is the subject of the dispute. The Baileys purchased their property ("Lot 4") in 2015 from Dennis' mother, Polly Jones. Dennis purchased his property ("Lot 5") in 1995 from his uncle, Arthur Jones, Jr. Both properties derive from a common source.

In 1938, the property of John A. Jones was divided among his heirs with Carrie Pigman receiving Lot 4 and Ethel Millard receiving Lot 5. Pigman deeded Lot 4 to Harold Jones, Dennis' father, in 1970. Lot 5 was deeded to Arthur Jones, Sr. in 1969 and then to Arthur Jones, Jr. in 1976. When Arthur Jones, Sr. transferred Lot 5 to Arthur Jones, Jr., the disputed property, located on Lot 5, was excepted from the transfer. When Arthur Jones, Sr. passed away, the disputed property passed to his six children.

Sometime after the Baileys purchased Lot 4, a conflict arose over who owned the metal pole barn located on the disputed property. On March 6, 2018, the Baileys filed a petition in Knott Circuit Court, seeking to be declared the legal

owners of the disputed property. Dennis filed an answer and counterclaim,[1] asserting his interest in the disputed property. On the advice of his attorney, Dennis obtained a quitclaim deed to the property from five of the six heirs of Arthur Jones, Sr. Dennis did not obtain the interest of his deceased father, Harold Jones. As a result, Dennis claimed a five-sixths' undivided interest in the disputed property.

A bench trial was held on March 15, 2019. Benny Ray Bailey testified that prior to purchasing Lot 4, he performed research to determine the property's boundary lines, including visiting the property valuation administrator's ("PVA") office and county clerk's office. He also spoke with Polly Jones and some of her neighbors. Based upon his research, Bailey believed the disputed property was located on Lot 4. Bailey conceded the disputed property is not contained within Lot 4's deed description. Bailey further testified that he has had insurance on the building and paid the power bill since he purchased Lot 4.

Anna Jones, a family member and neighbor for over 35 years, testified that the metal pole barn belonged to Harold Jones and that he used and occupied the building the entire time she has lived there. She further testified that Harold

---

[1] The Baileys filed an "Amended Complaint" on April 27, 2018 adding additional parties to the litigation. Jones' answer and counterclaim were filed in response to this amended complaint. Jones filed a motion to dismiss for failure to join indispensable parties in response to the original complaint.

built the metal pole barn shortly after his pool house burned down sometime around 1984. However, on cross examination, Anna admitted her belief that Harold owned the metal pole barn was based upon the fact that she did not think Harold would build a barn on someone else's land. She further conceded that she does not know for sure where the property line is between Lot 4 and Lot 5 or whether Harold's use of the disputed area could have been permissive. Anna also said that she observed Dennis coming and going from the building as he pleased.

Bobby Jacobs, whose sister married Arthur Jones, Jr. and lived on Lot 5 until around 1994 testified that he believed the metal pole barn was built on the disputed property before 1994 but was unsure. Polly Jones did not testify.

Dennis testified that he built the metal pole barn in 1995, shortly after purchasing Lot 5, to build a boat. His father suggested the location and offered to help. Dennis stated that he purchased the supplies and did most of the work. He allowed his father to put his pool water pump in the building when Harold's pool house burned down. Dennis further testified that his grandfather, Arthur Jones, Sr., agreed to help him build the metal pole barn on the disputed property. Dennis was aware the disputed property was excepted from the original deed from Arthur Jones, Sr. to Arthur Jones, Jr. He testified that his deed did not contain similar language because it was intended that the entire property pass to him, including the disputed portion.

Dennis stated that he worked on the boat for two years before moving to Florida and Georgia to work for Delta in 1997. He returned on the weekends and stayed in the metal pole barn, working on the boat. Dennis testified that at some point his father asked if he could store his vehicles in the metal pole barn and he agreed, moving his boat outside. Dennis admitted he had never purchased insurance for the metal pole barn.

Finally, Kenneth Johnson, a licensed surveyor, who was hired by the Baileys to perform survey of the various properties, testified that the metal pole barn is located on Lot 5, on the disputed area that was excepted out of Arthur Jones, Sr.'s deed to Arthur Jones, Jr. Johnson relied upon the deeds of record and testified that his survey was performed in accordance with professional standards.

Following the evidence, the trial court entered findings of fact, conclusions of law, and a judgment finding that the Baileys had no ownership interest in the disputed property. The court further found that Dennis had a five-sixths' undivided interest in the disputed property, and that the heirs of Harold Jones held the remaining one-sixth interest. This appeal followed.

"With respect to property title issues, the appropriate standard of review is whether or not the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error." *Phillips v. Akers*, 103 S.W.3d 705, 709 (Ky. App.

2002) (citation omitted). "Furthermore, in an action tried without a jury, the factual findings of the trial court shall not be set aside unless they are clearly erroneous, that is not supported by substantial evidence." *Id.* (citations omitted). "The trial court's conclusions of law are reviewed *de novo*." *Hoskins v. Beatty*, 343 S.W.3d 639, 641 (Ky. App. 2011) (citation omitted).

The Baileys present three arguments on appeal: (1) the trial court erred in failing to recognize their status as bona fide purchasers; (2) the court's findings of fact are not supported by substantial evidence; and (3) they are entitled to judgment on their claim of adverse possession.

Turning to the Baileys' first argument, the Baileys cannot be bona fide purchasers because they never purchased the disputed property. *See Davidson v. Jenkins*, 113 S.W. 901, 901 (Ky. 1908). "Only a purchaser of legal title to a property may claim bona fide purchaser status." 92A C.J.S. *Vendor and Purchaser* § 530 (2021). Here, it is admitted that the disputed property was not contained in the Baileys' deed description.

Further, based upon the survey, the disputed property lies on Lot 5 and thus Harold and Polly Jones, as owners of Lot 4, never owned the disputed property and thus had no title in the property to convey, despite what the Baileys believed or may have been told. *See* 92A C.J.S. *Vendor and Purchaser* § 530 (footnote omitted) ("The doctrine of bona fide purchaser without notice generally

does not apply where there is a total absence of title in the vendor, and the good faith of the purchaser cannot create a title where none exists.").

Next, the Baileys argue the trial court's findings of fact are not supported by substantial evidence. Specifically, they argue the trial court discounted PVA records in favor of Dennis' testimony as to ownership of the metal pole barn. "[H]ad the trial court accredited the records of the Knott County PVA as evidencing exclusivity of ownership of the metal pole barn on the disputed area," they assert, "the Baileys and their predecessors in interest would have sufficiently satisfied the period required for either adverse possession, *infra*, or for equitable title under the doctrine of laches." We disagree, both as to the alleged error and its import.

At trial, the Baileys introduced evidence of several PVA records which, they argue, show the metal pole barn was built prior to 1995, when Dennis testified he built the barn to construct a boat inside. Therefore, the barn could not have been built by Dennis and must have been constructed by Harold. Based upon Harold's construction and ownership of the metal pole barn, the Baileys allege title via adverse possession.

First, "insofar as [the Baileys] rel[y] on the property valuation administrator's records, those records do not establish title." *Stevens v. Peyton*,

No. 2015-CA-000761-MR, 2017 WL 128600, at *4 (Ky. App. Jan. 13, 2017).[2]

Second, "[i]t is within the province of the fact-finder to determine the credibility of witnesses and the weight to be given the evidence." *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 118 (Ky. 1991) (citation omitted). The question on appeal is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).

Dennis testified that he built the barn in 1995 shortly after purchasing Lot 5. Anna Jones testified the barn was built in 1984. Bobby Jacobs, another witness for the Baileys, believed the barn was built before 1994, but he was unsure. The trial court credited Dennis' testimony over the conflicting evidence, as was its right to do. Having reviewed the evidence, we find there was substantial evidence to support the trial court's finding.

Finally, the Baileys argue the trial court erred in rejecting their claim of adverse possession. We disagree. "[T]o establish title through adverse possession, a claimant must show possession of disputed property under a claim of right that is hostile to the title owners interest. Further, the possession must be

---

[2] Although unpublished, we cite *Stevens v. Peyton* as persuasive authority pursuant to Kentucky Rules of Civil Procedure 76.28(4)(c).

shown to be actual, open and notorious, exclusive, and continuous for a period of fifteen years." *Phillips*, 103 S.W.3d at 708 (citations omitted). "The party claiming title through adverse possession bears the burden of proving each element by clear and convincing evidence." *Id.* at 709 (citations omitted).

Based upon the evidence, the trial court found the disputed property had belonged to Arthur Jones, Sr., and at his death, passed to his heirs. The court further found that Arthur Jones, Sr. had permitted Harold Jones to use the disputed property as a garden, and that Dennis had permitted Harold Jones to use the metal pole barn. Therefore, the court concluded the Baileys could not prove the hostile requirement of adverse possession. The court further held the Baileys could not prove the continuous requirement of adverse possession because there was evidence that Dennis frequently used the metal pole barn, including to work on and store his boat and other equipment.

We agree with the trial court that the Baileys failed to prove their claim of adverse possession by clear and convincing evidence. Based upon the evidence, the Baileys could not prove their possession of the disputed property was hostile or exclusive. The Baileys concede that Harold Jones' use of the disputed property as a garden was done with the permission of Arthur Jones, Sr. Permissive use is not hostile and can never ripen into adverse possession. *See Henninger v. Brewster*, 357 S.W.3d 920, 927 (Ky. App. 2012) (citations omitted).

Further, Anna Jones, the Baileys' own witness, testified that Dennis came and went from the metal pole barn on the disputed property at will. Dennis also testified that he built the metal pole barn to build a boat, and that he worked on and stored his boat inside the metal pole barn. There was also evidence that Dennis stored other items inside the barn. "For purposes of a claim of adverse possession, there is no exclusive possession if the claimant merely shares dominion over the property with other users." 3 AM. JUR. 2D *Adverse Possession* § 65 (2021).

Based on the foregoing, the judgment of the Knott Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jason V. Reed
Covington, Kentucky

BRIEF FOR APPELLEE:

Jeremy R. Morgan
Hazard, Kentucky